[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 15, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-16220

_____

D.C. Docket No. 00-00671-CV-J-25(B)

LARRY HORTON,

                                        Plaintiff-Appellee,

versus

CITY OF ST. AUGUSTINE, FLORIDA,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 15, 2001)**

Before ANDERSON, Chief Judge, HULL and FAY, Circuit Judges.

HULL, Circuit Judge:

Defendant City of St. Augustine ("City") appeals the district court's preliminary injunction against the enforcement of Ordinance 2000-03, which restricted street performances in a four-block area of the City's historic district. Because the district court erred, we reverse, and vacate its injunction.

## I. BACKGROUND

This appeal involves the regulation of street performances in a four-block area of St. George Street in St. Augustine, Florida, that is closed to automobile traffic. Along with other artists and entertainers, Plaintiff Larry Horton performed as a "one-man band" for tourists and other pedestrians on St. George Street.

### A. City Code Section 22-9

On March 13, 2000, the City Commission passed Ordinance 2000-03, which created Section 22-9 of the Code of the City. Section 22-9 provides that street performances "may take place in all public areas" of the City except for a prohibited four-block area and specifically prohibits persons from performing, such as by acting, singing, playing musical instruments, and dancing, in only this four-block area, as follows:

> (b) *Definitions.* The following words, terms and phrases, when used in this article, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:
>
> (1) *Perform* includes, but is not limited to acting, singing, playing musical instruments, pantomime, mime, magic, dancing, and

2

the sale of visual art and wares, which shall include drawings and paintings applied to paper, cardboard, canvas or other similar medium when such art is applied to the medium through the use of brush, pastel, crayon, pencil, or other similar object, and the creation, display and/or sale of crafts made by hand or otherwise.

The following activities shall be prohibited because of issues of safety to the public: Any activity involving spray painting or use of aerosols or propellants, including air pressure, to spray or apply any liquid; the use of fire; or the use of any weapon as defined within Florida Statutes.

(2) *Prohibited public areas* means the pedestrian accessed public areas of St. George Street from Cathedral Place north to Orange Street and within 50 feet of that section of St. George Street on the public lanes, streets or thoroughfares.

(3) *Other public areas* means public streets, rights-of-ways, sidewalks, parks, playgrounds, and all public ways except those portions of the streets and roadways intended for use by vehicular traffic within the City of St. Augustine.

(c) *Prohibition*. No person may perform in a prohibited public area.

(d) *Permitted performances*. Performances may take place in all public areas of St. Augustine except that area on St. George Street located between Orange Street to the north and Cathedral Place to the south, and within 50 feet of this section of St. George Street on the intersecting public streets, lanes and thoroughfares.

A performer shall not perform in a manner that interferes with the visibility of any motorist, or at or near intersections or passages in a manner which interferes with the sight distance of any motorist traveling on or entering any thoroughfare in the City.

St. Augustine, Fla., Code § 22-9(b)-(d) (Mar. 2000).[1]

---

[1] Section 22-9, as enacted by Ordinance 2000-03, sets forth the City Commission's "Intent" in enacting it:

(a) *Intent*. The City Commission of the City of St. Augustine finds that the existence in

3

## B.  Complaint and Preliminary Injunction

On June 21, 2000, Horton filed a Complaint challenging Section 22-9 as unconstitutional "on its face."  Horton's Complaint claimed that Section 22-9 was:

(1) "unconstitutionally vague since it allows for the use of unbridled discretion in every instance,"

(2) "substantially overbroad and impinges upon conduct protected by the United States Constitution,"

(3) adopted with "a predominantly censorial purpose,"

(4) "not narrowly tailored to meet any substantial governmental interests," and

(5) a "content based prohibition on free expression protected by the United States Constitution."

Alleging the City had made arrests, seized instruments, and chilled his expression, Horton's Complaint requested declaratory and injunctive relief, court costs, and attorney's fees under 42 U.S.C. § 1988.

On August 30, 2000, Horton filed an Application for Preliminary

_____

the City of street performers, artists and others may provide a public amenity that may enhance the character of the City and therefore, the City does not seek to discourage such performances and activities to the extent that they do not interfere with the reasonable expectation of residents and the regulated, code compliant businesses and museums to the enjoyment of peace and quiet in their homes, businesses and museums or pose a safety risk to the public and passers-by posed by congestion and clutter in this area of St. Augustine.  This section seeks to balance the interests of the performers, artists, solicitors and speakers with those of the other residents and businesses and museums within the City.

St. Augustine, Fla., Code § 22-9(a) (Mar. 2000).  Ordinance 2000-03 also includes a severability clause providing that if any part is held unconstitutional, that holding would not be construed as rendering the remaining provisions invalid.

Injunction.[2]  His accompanying brief challenged Section 22-9 as being (1) vague,

(2) overbroad, and (3) impermissibly restrictive of speech as to time, place, and

manner.  As to vagueness, Horton claimed Section 22-9 does not "put ordinary

citizens on notice so they may avoid inadvertent violations of the law."  For

example, he argued, it "fails to set forth any guidelines to determine whether a

person singing is doing so for personal enjoyment or for the purpose of engaging in

a street performance."  This lack of "objective guidelines" prevents citizens from

knowing "what conduct is prohibited and whether they will be subject to arrest for

such innocent behavior such as whistling on St. George Street."  As a result,

Horton submitted, police officers are "vested with complete discretion to make

arbitrary determinations as to whether or not" someone is engaging in a "street

performance," thereby rendering Section 22-9 unconstitutionally vague.

As for overbreadth, Horton complained that Section 22-9 impermissibly

outlaws all "singing, acting and dancing" on St. George Street, as follows:

> [T]o the extent that the Ordinance purports to outlaw all singing, acting and
> dancing on St. George Street, it raises serious questions about the
> overbreadth of legislation by criminalizing innocent conduct.

---

[2] On August 30, 2000, Horton also filed an Amended Complaint adding a facial challenge to the City's licensing of street performers.  This licensing scheme, included in another section of the City Code, required that street performers obtain licenses from the police chief prior to engaging in activities when done for the purpose of "begging, soliciting or obtaining alms or gifts."  Horton later abandoned his challenge to this licensing scheme, and, thus, it is not addressed on appeal.

As for its validity as a time, place, and manner restriction, Horton asserted Section 22-9 is not narrowly tailored because (a) "the prohibition is twenty-four (24) hours a day and not limited to any times in which any particular pedestrian traffic concern or other problems could arise," (b) it "effectively bans all musical performances, even performances conducted with small musical instruments such as harmonicas or kazoos or even singing that cannot be shown to impact pedestrian traffic," and (c) it is "a ban on the entirety of St. George Street within the City of St. Augustine." Addressing the governmental purpose required of a valid time, place, and manner restriction, Horton also argued that the City's goal in enacting Section 22-9 – to aid the "free flow of traffic" – was "disingenuous" because it "allows outdoor restaurants with tables and chairs, along with news stands with newspaper racks – without concern for the flow of pedestrian traffic." Finally, he contended Section 22-9 was an improper restriction because it was "impermissible as under-inclusive in that it seeks to prevent only certain types of street performances which are intended to communicate a message and appears to be aimed at ridding the area of the then existing street performers...."

Opposing Horton's injunction request, the City argued that Section 22-9 was (1) content neutral as it did not distinguish between types of street performers, (2) a regulation narrowly tailored to serve a significant government interest, namely

6

guarding the aesthetic value of the historic area while reducing pedestrian congestion, (3) one that left open ample alternative channels for communication in other public and historic areas in the City, and (4) an enactment in which the definition of "perform" in Section 22-9(b)(1) was not unconstitutionally vague.

## C. Hearing on Preliminary Injunction

At the hearing on October 6, 2000, Horton again challenged multiple features of Section 22-9 as unconstitutionally vague, impermissibly overbroad, and unduly restrictive of speech in time, place, and manner. For example, although emphasizing vagueness in such phrases as "includes, but is not limited to" in the definition of "perform," Horton also asserted Section 22-9 was overbroad because "[t]his law criminalizes wholly-innocent activities. It criminalizes singing and dancing on St. George Street which makes it overbroad." Thus, he argued it "may be facially invalid even if [it] can have a legitimate application." Further attacking Section 22-9 as an unreasonable restriction on activities protected by the First Amendment, Horton explained that it impermissibly "targets certain types of speech that the City seeks to prevent on St. George Street due to its content or subject matter."

Relying on affidavit testimony and public hearing transcripts, the City responded that these restrictions were needed in this narrow four-block area due to

safety, noise, congestion, aggressive solicitation, and aesthetic harm caused by the street performers. The City further defended Section 22-9 as not unconstitutional on any of the grounds raised by Horton.

### D.    Preliminary Injunction

On October 13, 2000, the district court granted a preliminary injunction against the enforcement of Section 22-9 as enacted by Ordinance 2000-03. The court held that "the Ordinance is unconstitutionally vague" because (1) it failed to provide ordinary people notice of prohibited conduct, and (2) it promoted arbitrary and discriminatory enforcement.

Regarding notice of the prohibited conduct, the district court found that "it is not clear what expressive activities are covered by the Ordinance or under what circumstances someone would be in violation of the Ordinance." Citing the definition of "perform" and underlining its observation that this definition was "not to be limited to" its specified terms, the district court stated: "[f]or example . . . [b]ecause of the catch-all phrase 'but is not limited to,' the speech caught-up in this net is vast and undefined, and thus does not put an ordinary person on notice that what he or she is doing is proscribed by the Ordinance." (emphasis supplied) The court dismissed the City's argument that the "Intent" section prevented ambiguity, criticizing phrases such as "street performers, artists and others." See

8

St. Augustine, Fla., Code § 22-9(a) (Mar. 2000). While giving examples of textual

vagueness, the court appeared to make a wholesale conclusion that Section 22-9

and its definition of "perform" was unconstitutionally vague.[3] The court also

found that "[t]he infirmities noted in the context of fair notice also provide the

source for arbitrary and discriminatory enforcement of the Ordinance by the

police." Beside these vagueness issues, the district court did not address Horton's

other challenges to Section 22-9. The City timely appealed.[4]

### E.    Amendment to Section 22-9

After filing a notice of appeal, the City Commission amended Section 22-9

through its passage of Ordinance 2000-41 on November 29, 2000. That

amendment deleted certain words from Section 22-9 (by striking through them)

and added certain words (by underlining them), in the following manner:

> (b) *Definitions*. The following words, terms and phrases, when used
> in this article, shall have the meanings ascribed to them in this section,
> except where the context clearly indicates a different meaning:

> (1) *Perform* ~~includes, but is not limited to~~ means acting, singing,

---

[3] The district court may have used the term "for example" because Horton challenged not only the phrase "includes, but is not limited to" in the definition of "perform," but also "acting, singing, playing musical instruments [and] dancing" in that definition. Horton stressed that there were no guidelines for determining whether a person's "singing" was for personal enjoyment or for the purpose of a street performance.

[4] Subsequent to granting the preliminary injunction, the district court extended the discovery period until July 5, 2001, and scheduled the trial for February 2002.

playing musical instruments, pantomime, mime, magic, dancing, ~~and~~ <u>artistry or</u> the sale of visual art and wares, which ~~shall include~~ <u>means</u> drawings ~~and~~ <u>or</u> paintings applied to paper, cardboard, canvas or <u>to</u> other similar medium when such art is applied to the medium through the use of brush, pastel, crayon, pencil, or other similar object, and the creation, display and/or sale of crafts made by hand or otherwise.

(2) ~~The following activities shall be prohibited because of issues of safety to the public: Any~~ *Prohibited Activity* <u>means any</u> activity involving spray painting or use of aerosols or propellants, including air pressure, to spray or apply any liquid; the use of fire; or the use of any weapon as defined within Florida Statutes.

(2<u>3</u>) *Prohibited public areas* means the pedestrian accessed public areas of St. George Street from Cathedral Place north to Orange Street and within 50 feet of that section of St. George Street on the public lanes, streets or thoroughfares.

(4) *Street Performers* <u>as used in this ordinance means individuals who perform, as defined herein, on the streets of the City of St. Augustine.</u>

(3<u>5</u>) *Other public areas* means public streets, rights-of-ways, sidewalks, parks, playgrounds, and all public ways except those portions of the streets and roadways intended for use by vehicular traffic within the City of St. Augustine.

(c) *Prohibition*. No ~~person~~ <u>Street Performers</u> may perform in a prohibited public area. <u>No Street Performer may perform a Prohibited Activity anywhere in the City of St. Augustine.</u>

(d) *Permitted performances*. ~~Performances may take place~~ <u>Street performers may perform</u> in all public areas of St. Augustine except that area on St. George Street located between Orange Street to the north and Cathedral Place to the south, and within 50 feet of this section of St. George Street on the intersecting public streets, lanes and thoroughfares.

(e) *Exceptions.* A ~~performer~~ <u>Street Performer</u> shall not perform in a manner that interferes with the visibility of any motorist, or at or near intersections or passages in a manner which interferes with the sight distance

10

of any motorist traveling on or entering any thoroughfare in the City.[5]

St. Augustine, Fla., Code § 22-9(b)-(e) (Nov. 2000).[6]  The City's amendment

through Ordinance 2000-41 did not cure Horton's problems with Section 22-9

because it left the bulk of the challenged language in Section 22-9.  Indeed, Horton

promptly filed a Supplemental Complaint raising the same challenges to Section

---

[5] Section 22-9's "Intent" provision was amended to read:
  (a) *Intent*.  The City Commission of the City of St. Augustine finds that the existence in the City of ~~street performers, artists and others~~ Street Performers may provide a public amenity that may enhance the character of the City and therefore, the City does not seek to discourage such ~~performances and activities~~ Street Performers to the extent that they do not interfere with the ~~reasonable expectation of residents and the regulated, code compliant businesses and museums to the enjoyment of peace and quiet in their homes, businesses and museums or pose a safety risk to the public and passers-by posed by congestion and clutter in this area of St. Augustine.  This section seeks to balance the interests of the performers, artists, solicitors and speakers with those of the other residents and businesses and museums within the City~~ public health, safety, and welfare of the pedestrian traffic, including residents and tourists, and the City's interests in the aesthetics incident to the oldest City in the United States and the further interest of residents and the regulated, code compliant businesses and museums to the enjoyment of peace and quiet in their homes, businesses and museums or to the extent that they pose a safety risk to the public and passers-by by congestion and clutter in this area of St. Augustine.
St. Augustine, Fla., Code § 22-9(a) (Nov. 2000).

[6] Section 1 of Ordinance 2000-41 is entitled "Amending Section 22-9" and provides that "Section 22-9 of the Code of the City of St. Augustine is hereby amended, as follows . . ." Section 3 of Ordinance 2000-41 provides that "the provisions of this ordinance shall become and be made part of the Code of the City of St. Augustine and that the sections of this ordinance may be renumbered or relettered and the word ordinance may be changed to section, article or other such appropriate word or phrase in order to accomplish such intentions."
  It appears that subsequent to Ordinance 2000-41's amendment of Section 22-9, at least part of the City Code was renumbered, and Section 22-9 became Section 22-10.  For consistency, however, all references in this opinion will be to Section 22-9.

11

22-9, as amended by Ordinance 2000-41, as he did before.[7]  The City's Answer to Horton's Supplemental Complaint defended the constitutionality of Section 22-9, as amended by Ordinance 2000-41, on the same grounds as before.

## II.  STANDARD OF REVIEW

When reviewing a district court's entry of a preliminary injunction, we review findings of fact under a clearly erroneous standard, and conclusions of law de novo.  See SunAmerica Corp. v. Sun Life Assurance Co. of Canada, 77 F.3d 1325, 1333 (11th Cir. 1996).  The grant or denial of a preliminary injunction will be reversed only upon a showing of abuse of discretion.  See, e.g., Siegel v. LePore, 234 F.3d 1163, 1175 (11th Cir. 2000) (en banc) (citing cases); Carillon Importers, Ltd. v. Frank Pesce Int'l Group Ltd., 112 F.3d 1125, 1126 (11th Cir. 1997) (per curiam).

A district court may grant a preliminary injunction only upon the movant's showing that (1) it has a substantial likelihood of success on the merits, (2) the

---

[7] For example, Horton's Supplemental Complaint claims Section 22-9, as amended, (1) is unconstitutionally vague as it permits unbridled discretion and fails to establish ascertainable standards of guilt, (2) is unconstitutionally overbroad because it encompasses constitutionally protected activities and is not narrowly tailored to support a substantial government interest, (3) incorporates unconstitutional statutes, (4) remains an improper content-based restriction without standards for enforcement and protection of permissible activity, (5) was likewise enacted "with a predominantly censorial purpose," and (6) "prohibits a wide variety of First Amendment-protected activity from occurring in the [defined] pedestrian access public areas of St. George Street."

movant will suffer irreparable injury unless the injunction is issued, (3) the threatened injury to the movant outweighs the possible injury that the injunction may cause the opposing party, and (4) if issued, the injunction would not disserve the public interest. Siegel, 234 F.3d at 1176. It is well-established in this Circuit that "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion'" as to all four elements. Id. (citing cases).

### III. DISCUSSION

#### A.     Effect of Amendment to Section 22-9

We initially consider the effect of the City's amendment of Section 22-9 on this appeal because the "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate," Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). Indeed, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000) (citations and quotations omitted).

This Court has addressed frequently the familiar intersection of mootness analysis and post-judgment alterations to legislative enactments. Such alterations do not automatically strip federal courts of viable cases. Instead, post-judgment

13

alterations may moot a case to the extent they remove certain challenged features, but do not moot a case if they leave other challenged features substantially undisturbed. See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1313 (11th Cir. 2000) (rejecting suggestion of mootness when challenged portions of now-amended ordinance "have not been sufficiently altered so as to eliminate the issues raised"); see also Butler v. Alabama Judicial Inquiry Comm'n, 261 F.3d 1154, 1158 (11th Cir. 2001) (finding challenge to ethical canon to be "live" despite subsequent modification because pending controversy remained as to narrowed canon); Naturist Soc'y, Inc. v. Fillyaw, 958 F.2d 1515, 1520 (11th Cir. 1992) (holding amendment to challenged park regulations did not moot case because "[w]here a superseding statute leaves objectionable features of the prior law substantially undisturbed" and challenged aspects "remain essentially as they were before the amendments," the case is not moot).[8]

---

[8] See also Ciudadanos Unidos de San Juan v. Hidalgo County Grand Jury Commissioners, 622 F.2d 807, 824 (5th Cir. 1980) (finding amendment to grand jury selection system did not moot challenge and that when an amendment causes mootness it has "generally been one which completely eliminated the harm of which plaintiffs complained"); Johnson v. State, 586 F.2d 387, 388 (5th Cir. 1978) (concluding entire case becomes moot where "a superseding statute . . . satisfies all the principles sought in an attack on the prior statute"); accord, Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, 508 U.S. 656, 659-61 (1993).

Northeastern involved a minority contracting ordinance enjoined by the district court. While before the Supreme Court, the ordinance was repealed and replaced by a different regime aiding minority and female contractors. The Supreme Court commented that in a prior decision

14

Our decision in <u>Coalition</u> is particularly instructive regarding how and when subsequent legislative activity does not moot an appeal.  In <u>Coalition</u>, the district court found portions of a festival permit ordinance unconstitutional and enjoined its enforcement, but did not address all aspects of the plaintiffs' arguments.  219 F.3d at 1306-08.  While on appeal, the defendant city repealed the ordinance and "purported to correct those portions of it that the district court found unconstitutional and make clearer the remaining portions of the festival ordinance."  <u>Id.</u> at 1309.  This Court concluded the appeal was not moot even though the ordinance was superseded because:

> the "superseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law.  To the extent that those features remain in place, and changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case is not moot."

it held that a challenge to a repealed municipal ordinance was not moot because "repeal of the objectionable language would not preclude [the city] from reenacting precisely the same provision if the District Court's judgment were vacated."  508 U.S. at 662 (quoting <u>City of Mesquite v. Aladdin's Castle, Inc.</u>, 455 U.S. 283, 289 (1982)); <u>see also</u> <u>Jager v. Douglas County School Dist.</u>, 862 F.2d 824, 834 (11th Cir. 1989) (considering challenge to injunctive relief not to be moot "[b]ecause [enjoined party's] posture on appeal suggests it may revert to the [prior] practices it engaged in").  In <u>Northeastern</u>, the Supreme Court observed that there was "no mere risk that Jacksonville will repeat its allegedly wrongful conduct; it has already done so."  508 U.S. at 662.  The Supreme Court concluded that the lawsuit was not moot after examining the differences between the enactments.  Although conceding that the second version of the ordinance disadvantaged plaintiffs "to a lesser degree," the Court reasoned that the "gravamen of petitioner's complaint is that its members are disadvantaged in their efforts to obtain city contracts . . . . The new ordinance . . . disadvantages them in the same fundamental way."  <u>Id.</u>

15

Id. at 1310 (quoting Fillyaw, 958 F.2d at 1520). In Coalition, we examined whether the new ordinance "leaves objectionable features of the prior law substantially undisturbed" and has not "sufficiently altered [the statute] so as to present a substantially different controversy." Id. at 1311 (quotations and citations omitted). This Court determined that the city's amendments "do narrow the scope of events which will be governed" by the new ordinance, "however, they do not substantially alter" assertions that the challenged provision was an impermissibly content-based regulation not narrowly tailored to foster a legitimate government interest. Id. at 1314. "It is reasonable to expect that the alleged constitutional violations resulting from the enforcement of the [first version of the ordinance] will continue with the enforcement of the [new version]." Id. at 1315. Thus, this Court proceeded to review the merits of the injunction. Id.

Applying our precedent, we conclude that the City's amendment to Section 22-9 did not so fundamentally alter either its statutory framework or the gravamen of Horton's fundamental challenges as to render the original controversy moot. Instead, Ordinance 2000-41 left in place both the statutory framework and the bulk of the language of Section 22-9 as enacted by Ordinance 2000-03. The majority of Horton's challenges to Section 22-9 remain alive and unresolved.

Although Ordinance 2000-41 deleted certain language criticized by the

16

district court as impermissibly vague, Horton's vagueness challenge was not limited to the areas of Section 22-9 excised by Ordinance 2000-41.  For example, Horton challenged the terms "acting, singing, playing musical instruments, pantomime, mime, magic [and] dancing" in the definition of "perform" as all vague.  Horton also argued below and on appeal that (a) Section 22-9 "fails to contain a mens rea requirement" so that "a person singing ... for personal enjoyment" not intending to perform for the public might violate the ordinance, and (b) "[i]ts definitions are not narrowly defined and it fails to provide notice of what the City forbids with the requisite specificity."

The correctness of the district court's wholesale conclusion that Section 22-9 and its definition of "perform" was vague remains a live controversy.  Indeed, the list of specific activities in Section 22-9's definition of "perform" remains substantively unchanged.  These challenged terms, such as singing, acting, and dancing, were undefined at the time of the district court's ruling and remain so now.  Likewise, Horton's argument that the law is impermissibly vague because it lacked a mens rea requirement remains as current now as it did the day he filed suit.  These vagueness issues were not mooted by Ordinance 2000-41.

In addition to vagueness issues, Horton raised myriad arguments, catalogued above, regarding the overbreadth of the terms in Section 22-9 and the invalidity of

17

its time, place, and manner restrictions. For example, Horton challenges whether the City's interest in regulating safety, noise, and congestion adequately justifies the enacted regulation, whether Section 22-9 is impermissibly underinclusive in its scope, and whether it is narrowly tailored when it restricts all performances, including those with personal instruments such as a harmonica or kazoo, in a four-block area twenty four hours a day. That a live controversy remains is made clear by the fact that Horton incorporated all of his relevant prior challenges to Section 22-9 into his Supplemental Complaint aimed at Section 22-9 as amended.

Our conclusion that this appeal is not moot is also reinforced by prudential concerns. The City amended Section 22-9 but prefers to return to the broader, unamended version of Section 22-9. Given the City's history of legislating repeatedly in an effort to curb activity on St. George Street,[9] we conclude the activity is likely to recur, and the City's election to amend Section 22-9 in part does not remove our power to hear its case. See Friends of the Earth, Inc. v.

---

[9] According to both Horton's Complaint and the City's Answer, Section 22-9 was not the City's first attempt to regulate street performers. In 1983, the City enacted Section 22-6 of the Code of the City of St. Augustine, prohibiting street performances on all public property within the City. On January 31, 2000, a district court held Section 22-6 unconstitutional on the ground that it was not narrowly tailored to serve a significant government interest. See Warren Celli v. City of St. Augustine, No. 3:98-CV-253-J-21B (M.D. Fla., Jan. 31, 2000).

18

Laidlaw Environmental Services, Inc., 528 U.S. 167, 189 (2000)[10]; City of

Mesquite, 455 U.S. at 289 & n.11 (concluding appeal not moot because "repeal of

the objectionable language would not preclude [the city] from reenacting precisely

the same provision if the District Court's judgment were vacated" and noting "the

city has announced just such an intention" at oral argument); Dow Jones & Co.,

Inc. v. Kaye, 256 F.3d 1251, 1256 (11th Cir. 2001) (recognizing exception to

mootness doctrine when "there is a reasonable expectation that the same

complaining party will be subject to the same action again") (quotation and citation

omitted).

After pausing for the requisite mootness analysis, we conclude that although

Section 22-9 was amended, the gravamen of Horton's trio of major constitutional

complaints – vagueness, overbreadth, and invalid time, place, and manner

restrictions – about the street performance restrictions are nearly identical,

---

[10] The Supreme Court stated in Laidlaw that:
It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant . . . free to return to his old ways. ... [T]he standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.
528 U.S. at 189 (citations and quotations omitted).

19

unresolved, and not fundamentally altered, as Horton himself admits in his Supplemental Complaint. Section 22-9 as originally enacted and Section 22-9 as amended are fundamentally similar. Moreover, the City requests the ability to enforce Section 22-9, as originally enacted by Ordinance 2000-03, because of its broader language. Thus, a live controversy remains, which we now resolve.

## B. Facial Challenge Based on Vagueness

The district court's preliminary injunction was based on its conclusion that Horton had shown a substantial likelihood of success on the merits of his claim that Section 22-9 is unconstitutionally vague. The district court, however, did not apply the proper legal standard for facial challenges based on unconstitutional vagueness.

"A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself." United States v. Frandsen, 212 F.3d 1231, 1235 (11th Cir. 2000). The general rule is that for a facial challenge to a legislative enactment to succeed, "the challenger must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987). "The fact that [a legislative act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid. . . ." Id. This "heavy burden" makes such an attack "the most difficult

20

challenge to mount successfully" against an enactment. Id.[11]

Applying Salerno's general rule, we conclude that Horton has not established that Section 22-9 is unconstitutionally vague on its face. Section 22-9, both before and after the amendment, identifies with specificity no less than eight types of street performances that come within its prohibition – acting, singing, playing musical instruments, pantomime, mime, magic, dancing, and the sale of visual art and wares. Section 22-9 is not facially invalid under Salerno because circumstances exist under which it clearly would *not* be unconstitutionally vague – i.e., when a person begins to sell oil paintings or stages a magic show within the prescribed area.

We recognize that "'the Salerno rule' has been subject to a heated debate in the Supreme Court, where it has not been consistently followed." Frandsen, 212 F.3d at 1236 n.3 (listing Supreme Court's decisions and discussing Justices' disagreement over how high the threshold should be set for facial invalidation). Because certain inroads into Salerno's rule have developed, we discuss them as well.

---

[11] In Salerno, because the parties "failed to shoulder their heavy burden" in arguing that the Bail Reform Act violated the Due Process and Excess Bail Clauses on its face, the Supreme Court upheld its constitutionality. 481 U.S. at 745; see also Williams v. Pryor, 240 F.3d 944, 953 (11th Cir. 2001) (recognizing and applying Salerno test); Gulf Power Co. v. United States, 187 F.3d 1324, 1328 (11th Cir. 1999) (same).

In its most recent discussion of facial challenges based on vagueness, the Supreme Court did not apply Salerno's "unconstitutional-in-every-conceivable-application" rule but upheld a facial challenge to a criminal law that had "no mens rea requirement" and "infringe[d] on constitutionally protected rights" in large part because vagueness so permeated the text of that law. City of Chicago v. Morales, 527 U.S. 41, 55 (1999). In Morales, the Supreme Court invalidated an ordinance banning gang members from loitering in public places after being ordered to disperse. Id. at 45-47. The ordinance defined loitering as "to remain in any one place with no apparent purpose." Id. at 47 n.2 (emphasis supplied). This definition was vague "in the sense that no standard of conduct is specified at all." Id. at 60 (quotation and citation omitted). No conduct or overt act was identified to distinguish innocent loitering from criminal loitering, and the ordinance "fail[ed] to give the ordinary citizen adequate notice of what is forbidden and what is permitted." Id. at 60. The ordinance also did not provide specific limits on or adequate guidelines for the enforcement discretion of the police. Id. at 63-64. Thus, if one's purpose was not apparent to the police officer, then one was loitering. As a result, the Supreme Court concluded that the ordinance provided impermissible absolute discretion to the police to decide whether a citizen was loitering or not.

22

In contrast, vagueness does not permeate Section 22-9. The restricted four-block area is precisely identified, and the conduct that constitutes a prohibited performance is specified in detail. In fact, given its definition of "perform," an individual, whether a police officer, tourist, or casual observer, walking in the four-block area will be readily able to discern who is or is not engaged in a street performance. For purposes of a facial challenge, the definition of perform enables the ordinary citizen to conform his or her conduct to the law. As opposed to Morales' description of loitering, the definition of perform does not render the ordinance invalid, but adequately gives notice of the activities that will be considered performances. Indeed, Section 22-9 uses ordinary terms that have common usage and understanding.

Further, Section 22-9 does not authorize or encourage arbitrary or discriminatory enforcement. Unlike the essentially unbridled discretion afforded by "no apparent purpose" in Morales, Section 22-9 provides adequate guidelines for what constitutes a street performance. We have no doubt that officers are able to determine whether persons are playing musical instruments, acting, singing, dancing, or selling defined wares in the clearly enumerated restricted areas, and thus whether they are violating the law in issue. The phrase "includes, but is not limited to" in the initial definition of "perform" also does not change our

23

conclusion under either <u>Morales</u> or <u>Salerno</u>.  That phrase must be read and placed in the context of the overall law and conveys only that "perform" is not limited to the examples listed.  Section 22-9 prohibits street performances in a four-block area, and, if anything, the use of the phrase "includes, but is not limited to" in the definition of "perform" notifies the public that street performance is any kind of street performance in addition to those specifically listed.  <u>See</u> <u>Florida Businessmen for Free Enterprise v. City of Hollywood</u>, 673 F.2d 1213, 1220-21 (11th Cir. 1982) (finding drug paraphernalia law containing phrase "includes, but is not limited to" not to be unconstitutionally vague);  <u>Gatena v. County of Orange</u>, 80 F. Supp.2d 1331, 1333, 1341 (M.D. Fla. 1999) (same regarding public nudity ordinance), <u>aff'd</u>, 226 F.3d 649 (11th Cir. 2000).  In sum, following the analysis used in <u>Morales</u>, we conclude that Section 22–9, as enacted or as amended, is not unconstitutionally vague on its face.[12]

---

[12] If Horton's injunction request were based on vagueness grounds as applied, it also would fail.  As a "one-man band" who apparently plays a number of musical instruments at the same time, Horton obviously comes within the prohibition on "playing musical instruments" in the four-block area and should understand that prohibition.  Horton thus cannot logically assert that he had no "notice that will enable ordinary people to understand what conduct [the Act] prohibits."  <u>Morales</u>, 527 U.S. at 56 (citing <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983)).

In addition, we note that, to the extent <u>Morales</u> departed from the strict rule of <u>Salerno</u>, it did so in a context entirely different from this case.  As the Supreme Court noted, the ordinance in <u>Morales</u> was reviewed on appeal from a state court not bound to follow federal courts' prudential notions of standing related to facial challenges.  527 U.S. at 55 n.22.  The Supreme Court explained that:

When asserting a facial challenge, a party seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question.  In this

24

## C.    Facial Challenge Based on Overbreadth

In addition, the Supreme Court itself in <u>Salerno</u> acknowledged an exception

to the "unconstitutional-in-every-conceivable-application" rule in cases involving

the overbreadth doctrine in "the limited context of the First Amendment."  <u>Salerno</u>,

481 U.S. at 745 (citing <u>Schall v. Martin</u>, 467 U.S. 253, 269 n.18 (1984)); <u>see also</u>

<u>Morales</u>, 527 U.S. at 52 (describing overbreadth and vagueness as "two different

doctrines" under which imprecise laws can be challenged).  In such cases, facial

challenges may be successful though "its application in the case under

consideration may be constitutionally unobjectionable."  <u>Forsyth County v.</u>

<u>Nationalist Movement</u>, 505 U.S. 123, 129 (1992).  The reason for this exception

lies in the fact that "the very existence of some broadly written laws has the

potential to chill the expressive activity of others not before the court."  <u>Id.</u>  Thus,

the Supreme Court has permitted facial challenges based on overbreadth "where

every application creates an impermissible risk of suppression of ideas, such as an

ordinance that delegates overly broad discretion to the decisionmaker, and in cases

where the ordinance sweeps too broadly, penalizing a substantial amount of speech

that is constitutionally protected."  <u>Id.</u> at 129-30 (citations omitted).  This

---

sense, the threshold for facial challenges is a species of third party (<u>jus tertii</u>) standing, which we have recognized as a prudential doctrine [that] . . . . state courts need not apply. <u>Id</u>.  This case, of course, originated in federal court.

25

exception, however, has generally been applied only to prior restraints on speech such as before-the-fact permitting and licensing regimes.  See Frandsen, 212 F.3d at 1236 (recognizing exception to "general rule" of Salerno for "facial challenges to prior restraints on speech" and listing Eleventh Circuit cases applying the exception in permitting and licensing regimes).

Horton's challenge does not qualify under the specialized exception for "prior restraints on speech" because it does not involve a permitting or licensing scheme or other prior review but instead an after-the-fact enforcement.  Id. at 1236-37 (defining prior restraint as "when the government can deny access to a forum for expression before the expression occurs") (emphasis added) (citing Ward v. Rock Against Racism, 491 U.S. 781 (1989)).[13]

Even if it did fall within a Salerno exception, Section 22-9, as originally enacted and as amended, is not unconstitutionally overbroad on its face.  A legislative enactment may be constitutionally overbroad "when lawmakers define the scope of a statute to reach both unprotected expression as well as, at least potentially, protected speech."  Ward v. County of Orange, 217 F.3d 1350, 1355 (11th Cir. 2000) (quotation and citation omitted).  But a law is considered facially

_____

[13] In Rock Against Racism, the Supreme Court concluded that a regulation of noise volume was not a prior restraint because the "relevant question is whether the challenged application authorizes suppression of speech in advance of its expression. . . ." (emphasis added). 491 U.S. at 795 n.5.

26

invalid on this basis only when it is "substantially overbroad, that is, its application would be unconstitutional in a substantial proportion of cases." Id. It is not, however, a common judicial remedy. "In considering the overbreadth doctrine, we remain mindful its application is strong medicine, and has been employed by the [Supreme] Court sparingly and only as a last resort." United States v. Acheson, 195 F.3d 645, 650 (11th Cir. 1999) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973)). "[W]here *conduct* and not merely *speech* is involved . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Agan v. Vaughn, 119 F.3d 1538, 1542 (11th Cir. 1997) (quoting Broadrick, 413 U.S. at 615) (emphasis added).[14]

Here, Section 22-9's language, under both the original and amended version, is not substantially overbroad. The law specifies a limited area in which distinct types of expression and physical conduct – not all speech – may not take place, such as acting and singing as well as the sale of visual art and wares. This is a step

---

[14] Accord, Los Angeles Police Dep't v. United Reporting Publ'g Corp., 528 U.S. 32, 39-40 (1999) (function of overbreadth invalidation "attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct – even if expressive – falls within the scope of otherwise valid criminal laws") (quotation and citation omitted); see also Acheson, 195 F.3d at 650 ("When facing an overbreadth challenge, a court should first attempt to construe the statute in a manner which avoids constitutional problems.") (citation omitted).

the City may legitimately take in pursuit of its aforementioned interests, and one

that does not impinge to a great degree on one's freedom of speech – which

remains largely untrammeled on St. George Street.  Thus, when judged "in relation

to the statute's plainly legitimate sweep," protected expression condemned by the

application of Section 22-9 is insubstantial.[15]  Any protected expression harmed by

Section 22-9 can be remedied independent of a facial challenge.  See United States

v. Waymer, 55 F.3d 564, 569 (11th Cir. 1995) ("If a conduct-regulating statute

reflects legitimate governmental interests and is not substantially overbroad,

whatever overbreadth does exist should be cured on a case-by-case basis.")

(citation omitted).[16]

### D.    Facial Challenge Based on Time, Place, and Manner

---

[15] See Acheson, 195 F.3d at 650 (finding relatively "minimal" overbreadth of child pornography law to be permissible because "[e]ven where a statute at its margins infringes on protected expression, facial invalidation is inappropriate if the remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct . . .") (quotations and citation omitted); United States v. Gilbert, 130 F.3d 1458, 1463 (11th Cir. 1997) (rejecting overbreadth challenge when only specific activities listed in ordinance required permit).

[16] In Morales, the Supreme Court instructed that the overbreadth doctrine may permit "the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial . . ." 527 U.S. at 52.  In that case, the Supreme Court agreed "with the city's submission that the law does not have a sufficiently substantial impact on conduct protected by the First Amendment to render it unconstitutional. The ordinance does not prohibit speech." Id. at 52-53.  Likewise, the City's ordinance here does not solely prohibit speech and, to the extent it does restrict speech, it does not have a sufficiently substantial impact on speech to render it overbroad.

Horton's facial challenge to Section 22-9 as an improper time, place, and manner restriction also fails. We look to our longstanding First Amendment jurisprudence to assess the validity of the City's restrictions on Horton's conduct and hold that he has not established a likelihood of success on the merits on this claim either.

As the district court correctly noted, street performances are a form of expression protected by the First and Fourteenth Amendments of the United States Constitution. See, for example, Davenport v. City of Alexandria, 710 F.2d 148, 150 (4th Cir. 1983) (en banc); Friedrich v. City of Chicago, 619 F. Supp. 1129, 1141 (N.D. Ill. 1985). In traditional public fora, such as the city streets and sidewalks in this case,[17] this Court permits governments to "enforce regulations of the time, place, and manner of expression which [1] are content-neutral, [2] are narrowly tailored to serve a significant government interest, and [3] leave open ample alternative channels of communication." Smith v. City of Fort Lauderdale, 177 F.3d 954, 956 (11th Cir. 1999) (quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983)).

The City's restriction of street performances within a four-block area of a

---

[17] See International Caucus of Labor Committees v. City of Montgomery, 111 F.3d 1548, 1550 (11th Cir. 1997) ("A sidewalk, although specifically constructed for pedestrian traffic, also constitutes a public forum.").

historic district satisfies this First Amendment analysis and is a legitimate exercise of legislative authority. On its face, Section 22-9, as originally enacted and as amended, does not discriminate based on the viewpoints or opinions of the street performers[18] and promotes other enumerated municipal purposes.[19] See Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (describing test as whether ordinance "serves purposes unrelated to the content of expression" and is "justified without reference to the content of the regulated speech"). It is also adequately tailored to serve the proffered justification of crowd and traffic control. See Smith, 177 F.3d at 957 (upholding anti-begging ordinance based on effect on tourism

---

[18] Horton's stray references in his pleadings to Section 22-9 targeting certain types of speech based on content are unsupported by any evidence presented in the district court and are insufficient to support a facial challenge to this otherwise valid enactment.

[19] The City filed a transcript of a City Commission hearing prior to the enactment of Section 22-9 and several affidavits to document its governmental interests. The City planner averred that the City received testimony that (1) congestion caused by the crowds drawn by street performers had the potential to injure pedestrians and properties in an emergency, and (2) certain street performers accosted passersby through physical contact, profanity, and the blockage of traffic. The affidavit of a City police officer, who patrolled St. George Street, indicated that he was aware of instances in which pedestrians were verbally harassed by street performers and street performers impeded pedestrian traffic and blocked business entrances.

One business owner submitted an affidavit detailing difficulties he had carrying inventory to his store because of crowds drawn by the street performers and the items the performers left in the street. The business owner was "accosted, insulted and threatened by various street entertainers and performers," and witnessed performers intimidating and insulting passersby because they did not donate to or observe performers. He had also observed entertainers enter his business to "harass or intimidate" employees and predicted such activities "could escalate into physical violence." Another St. George Street business owner submitted fifteen pages of pictures depicting street performers and sixty-three pages of correspondence, pictures, letters to the editor, and newspaper articles regarding issues related to St. George Street street performers. The issues discussed in these materials included congestion, noise, illegal activity, rudeness, and diminished aesthetics.

because restriction "need not be the 'least restrictive or least intrusive means' of serving the City's interest") (citation omitted); <u>Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta</u>, 219 F.3d 1301, 1318 (11th Cir. 2000) (applying same test).[20]  Furthermore, it leaves open a wide swath of public space for Horton's activities outside the enumerated four-block area.  <u>See</u> <u>ISKCON Miami, Inc. v. Metropolitan Dade County</u>, 147 F.3d 1282, 1290 (11th Cir. 1998) (finding requirement satisfied even if alternative channels "may be less effective than [challenger] would prefer").  We thus cannot sustain the district court's grant of injunctive relief based on Horton's time, place, and manner claims.

### III. CONCLUSION

In sum, we conclude that Horton has not shown a substantial likelihood of success on his constitutional challenges to Section 22-9, as enacted or as amended.  Therefore, we REVERSE and VACATE the district court's order, filed October 13, 2000, and its entry of a preliminary injunction therein, and REMAND this case for further proceedings consistent with this opinion.[21]

---

[20] This result would be the same if, as the district court alluded to in a footnote, Horton's performance involved solicitation to contribute money.  <u>See</u> <u>Jim Gall Auctioneers, Inc. v. City of Coral Gables</u>, 210 F.3d 1331, 1332-33 (11th Cir. 2000) (applying less stringent commercial speech test under <u>Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n</u>, 447 U.S. 557, 566 (1980), to uphold city ordinance restricting auction activities).

[21] A state trial court already has reached this same conclusion in a case involving a person arrested for singing and playing a "guitar and/or harmonica" on St. George Street.  <u>See</u> <u>State v. Jolley</u>, Case Nos. MM01-2333, MM01-3124 (Fla. Co. Ct. July 20, 2001).  The state court

REVERSED, VACATED, and REMANDED.

---

concluded that Section 22-9, as amended, "defines the proscribed conduct with sufficient clarity and does not contain terms where one must necessarily guess at their meaning." The state court also determined that Section 22-9, as amended, was a constitutional restriction on street performances because it (1) was content-neutral, (2) was narrowly tailored to serve the significant government interests of ensuring the free flow of pedestrian traffic on St. George Street and ensuring businesses, historical properties, and residences have unfettered ingress and egress, and (3) left open ample alternative channels of communication for street performers elsewhere in the City).