## UNITED STATES of America

v.

### Sami Amin AL–ARIAN, Sameeh Hammoudeh, Ghassan Zayed Ballut, Hatim Naji Fariz

#### No. 8:03CR77T30TBM.

United States District Court,
M.D. Florida,
Tampa Division.

Aug. 4, 2004.

Daniel W. Eckhart, U.S. Attorney's Office, Middle District of Florida, Orlando, FL, Walter E. Furr, III, U.S Attorney's Office, Middle District of Florida, Tampa, FL, for Plaintiff.

Kevin T. Beck, Federal Public Defender's Office, Middle District of Florida, Tampa, FL, Stephen N. Bernstein, Stephen N. Bernstein, P.A., Gainesville, FL, Jeffrey Geldert Brown, Brown & Doherty, P.A, Palm Harbor, FL, Richard P. Condon, Law Office of Richard P. Condon, Kissimmee, FL, M. Allison Guagliardo, Federal Public Defender's Office, Middle District of Florida, Tampa, FL, Daniel Mario Hernandez, Law Office of Daniel M. Hernandez, Tampa, FL, Donald E. Horrox, Federal Public Defender's Office, Middle District of Florida, Tampa, FL, Bruce G. Howie, Piper, Ludin, Howie & Werner, P.A., St. Petersburg, FL, Franklyn Louderback, Louderback and Helinger, St. Petersburg, FL, Nicholas M. Matassini, The Matassini Law Firm, P.A., Tampa, FL, William B. Moffitt, Cozen O'Connor, P.C., Washington, DC, Linda G. Moreno, Law Office of Linda Moreno, Tampa, FL, Wadie E. Said, Federal Public Defender's Office, Middle District of Florida, Tampa, FL, Terry Zitek, U.S. Attorney's Office, Tampa, FL, for Defendants.

## ORDER

MOODY, District Judge.

This cause came on for consideration without oral argument upon the Government's Motion for Modification of Ruling on Scienter under 18 U.S.C. § 2339B(a)(1) (Dkts.# 519, 520) and Defendants' responses (Dkts.# 540, 541, 543, 563) thereto. After close consideration, the motion is denied.

## I. BACKGROUND

This is a criminal action against alleged members of the Palestinian Islamic Jihad–Shiqaqi Faction (the "PIJ") who purportedly operated and directed fundraising and other organizational activities in the United States for almost twenty years. The PIJ is a foreign organization that uses violence, principally suicide bombings, and threats of violence to pressure Israel to cede territory to the Palestinian people. The PIJ has been designated a foreign terrorist organization ("FTO") and a specially designated terrorist ("SDT") by the United States government. Both designations create potential legal consequences (including criminal liability) to those people in the United States that support or are associated with the PIJ.

On February 19, 2003, the government indicted eight defendants in a 50 count indictment that included counts for: (1) conspiracy to commit racketeering (Count 1); (2) conspiracy to commit murder, maim, or injure persons outside the United States (Count 2); (3) conspiracy to provide material support to or for the benefit of

foreign terrorists (Counts 3 and 4); (4) violations of the Travel Act (Counts 5 through 44); (5) violation of the immigration laws of the United States (Counts 45 and 46); (6) obstruction of justice (Count 47); and (7) perjury (Counts 48 through 50). The four Defendants[1] that are before this Court moved to dismiss the Indictment, raising a variety of constitutional and procedural issues. In support of their respective positions, Defendants and the government filed over three hundred pages of briefs. The parties' briefs largely concentrated on the constitutionality of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132 ("AEDPA"). In addition to the lengthy briefs filed by the parties, this Court conducted an oral argument that lasted over three hours that also focused on the constitutionality of AEDPA and the statutory construction of that statute.

During oral argument, this Court questioned government's counsel at length on the *mens rea* required to support a conviction under Section 2339B of AEDPA. The government took the position that the *mens rea* necessary to support a conviction under Section 2339B was proof that a: "defendant knew of the designation of the organization as a foreign terrorist organization or the defendant knew that the organization engaged in or had engaged in terrorist activity ...." Hrg. Tr. Jan. 21, 2004 at 81. Indeed, the government explicitly adopted the *mens rea* requirements utilized by the Ninth Circuit in *Humanitarian Law Project v. U.S. Dep't of Justice*, 352 F.3d 382 (9th Cir.2003) (hereinafter "*Humantarian II*") and *Humanitarian Law Project v. Reno*, 205 F.3d 1130 (9th Cir.2000) (hereinafter "*Humanitarian I*") (collectively *Humanitarian I* and *Humanitarian II* are referred to as the "*Humanitarian* cases").[2] The government argued that the presence of a *mens rea* requirement in AEDPA avoided or cured the constitutional problems raised by Defendants.

On March 12, 2004, this Court entered an Order disposing of numerous pretrial motions, including Defendants' motions to dismiss the Indictment. In its Order, this Court denied almost all of Defendants' motions to dismiss,[3] including Defendants' motions to declare AEDPA unconstitutional. As a prerequisite to dealing with the constitutionality of AEDPA, this Court interpreted the *mens rea* required to support a conviction under Section 2339B(a)(1) as requiring the government to prove beyond a reasonable doubt that a defendant knew (had a specific intent) that the support would further the illegal activities of a FTO.[4] On April 26, 2004, the government sought reconsideration of this specific in-

1. For purposes of this Order, this Court is only referring to Defendants Al–Arian, Hammoudeh, Ballut, and Fariz, when it uses the word "Defendants."

2. The government did not distinguish between the *mens rea* requirements required in each of the two cases. The government's argument was more consistent with the *mens rea* requirement annunciated in *Humanitarian II*.

3. This Court granted Defendant Fariz's motion to quash the extortion allegation and deferred ruling on several surplusage issues until trial.

4. This Court commented, however, that this burden was not extremely heavy on the government. For example, this Court stated that the burden could be carried when the government demonstrated that "a defendant knows that the organization [the FTO] continues to commit illegal acts and the defendant provides funds to that organization knowing that money is fungible and, once received, the donee can use the funds for any purpose it chooses."

tent requirement.[5] For the most part, the government's arguments in the instant motion remain unchanged from those positions it advanced in response to the original motions to dismiss.[6]

## II.  DISCUSSION

■ While this Court does not normally view its role in the federal judiciary as one to comment on theoretical or philosophical subjects, this Court finds that it is appropriate to do so briefly here.  Underlying the motions to dismiss is a question that has troubled courts throughout this Nation's history:  how does this Nation (and its courts) balance an individual's constitutional rights against national security and foreign policy interests?  Normally, the doctrine of separation of powers requires that courts, including this one, defer to executive and legislative determinations on foreign policy and national security questions.  *See, e.g., Zadvydas v. Davis,* 533 U.S. 678, 696, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (stating that "heightened deference [is due] to the judgments of political branches with respect to matters of national security.").  But, less deference is required when individual constitutional rights are implicated.  *See, e.g., United States v. Robel,* 389 U.S. 258, 264, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967) (stating that: "[i]t would indeed be ironic if, in the name of national defense, we would sanction the subversion of one of those [constitutional]

liberties ... which makes the defense of the Nation worthwhile.").  More recently, Justice O'Connor acknowledged the judiciaries' role in such issues, stating that in "our most challenging and uncertain moments ... we must preserve our commitment at home to the principles for which we fight abroad." *Hamdi v. Rumsfeld,* — U.S. —, —, 124 S.Ct. 2633, 2647–48, 159 L.Ed.2d 578 (2004) (O'Connor, J., plurality).  She continued by bluntly commenting that "a state of war is not a blank check for the President when it comes to the rights of the Nation's citizens" and that the courts should play their necessary role to balance individual constitutional rights with the government's interest(s). *Id.* at 2650.

While these Defendants have not been charged with making war against the United States and no state of war exists between the United States and the PIJ, the foreign policy and national security interests implicated in this case and by AEDPA are no less weighty.  In its prior Order, this Court, being mindful of the weighty governmental interests implicated in this case and the First Amendment and other constitutional rights of these Defendants, attempted to achieve the appropriate balance.  The government now seeks reconsideration of that balance, arguing that this Court weighed too heavily the individual constitutional rights[7] touched by 18 U.S.C. § 2339B.[8]  This Court disagrees.

---

**5.** The government has not moved for reconsideration of this Court's conclusion with respect to the *mens rea* required to support a conviction under the International Emergency Economic Powers Act, 50 U.S.C. § 1701, *et seq.* ("IEEPA").  In its prior Order, this Court concluded that a defendant must have had a specific intent to further the illegal activities of the SDT by making or receiving a contribution of goods or services.

**6.** The government's claim that it "had not had the opportunity to address the scienter ele-

ment applicable to Section 2339B" is disingenuous at best.  The scienter element was prominently featured and discussed throughout the briefs and oral arguments of the parties.  Indeed, it was one of the chief reasons the government argued that Section 2339B was constitutional.

**7.** Indeed, the thrust of the government's argument is that no constitutional rights are implicated by the prohibitions contained in Section 2339B(a)(1).

## A. STATUTORY INTERPRETATION

In its prior Order, the question of statutory interpretation before this Court was how to construe Section 2339B(a)(1), which provides that persons who:

knowingly provide[ ] material support [9] or resources to a foreign terrorist organization, or attempt[ ] or conspire[ ] to do so, shall be fined under this title or imprisoned not more than 15 years, or both, and if the death of any person results, shall be imprisoned for any term of years or for life.

18 U.S.C. § 2339B(a)(1). There are at least three logical constructions of the level of knowledge required by this statute:

(1) knowledge simply that a person is providing something defined as "material support" in the statute; [10]

(2) knowledge, in addition to the first requirement, that the recipient is a FTO or is an entity that engaged in the type of terrorist activity that would lead to designation as a FTO; or

(3) knowledge, in addition to the previous two requirements, that the recipient could or would utilize the support to further the illegal activities of the entity.

██ The government concedes that the first construction violates the Supreme Court's decision in *United States v. X–Citement Video, Inc.*, 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994). It urges that this Court reconsider its prior ruling, adopt the second construction, and reject the third construction (the construction that this Court previously chose). Central to this Court's adoption of the third construction and largely unaddressed in the instant motion is the canon of statutory interpretation that courts are to interpret statutes in a manner that avoids constitutional difficulty.[11] *See, e.g., Jones v. United States*, 526 U.S. 227, 239–40, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); *X–Citement Video*, 513 U.S. at 78, 115 S.Ct. 464; *Frisby v. Schultz*, 487 U.S. 474, 483, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988).

In *Jones*, the Supreme Court summarized this canon of statutory construction

---

8. This Court would note that three out of the four courts that have squarely considered the constitutionality of Section 2339B concluded that parts of it were unconstitutional. *See, e.g., Humanitarian I*, 205 F.3d at 1133–34 (concluding "personnel" and "training" as utilized in AEDPA to be unconstitutionally vague); *Humanitarian Law Project v. Ashcroft*, 309 F.Supp.2d 1185 (C.D.Cal.2004) (concluding "expert advice or assistance" to be unconstitutionally vague); *United States v. Sattar*, 272 F.Supp.2d 348, 357–60 (S.D.N.Y.2003). While none of these decisions is binding on this Court, those decisions do indicate that other judges believe that serious constitutional concerns exist under Section 2339B.

9. "Material support" is broadly defined in AEDPA to mean "currency or other financial securities, financial services, lodging, training, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives,

personnel, transportation, and other physical assets, except medicine or religious materials." 18 U.S.C. § 2339A(b); *id.* § 2239B(g)(4).

10. This Court is not requiring that the government prove that Defendants knew that what they actually were providing was within the list of items defined as "material support" in Section 2339A. Ignorance of the law is not a defense to Section 2339B.

11. Indeed, this Court is not to squarely address constitutional issues if it can be avoided. *See, e.g., Three Affiliated Tribes of Ft. Berthold Reservation v. World Engineering, P.C.*, 467 U.S. 138, 157, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984) (Scalia, J., concurring in part and concurring in judgment) (the doctrine of judicial restraint requires judges not to "decide questions of a constitutional nature unless absolutely necessary to a decision of the case.").

by stating that "'where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.'" 526 U.S. at 239, 119 S.Ct. 1215 (quoting *United States ex rel. Attorney General v. Delaware & Hudson Co.,* 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909)). The Court went on to conclude that the standard for utilizing this canon was when prior precedent "suggest[ed] rather than establish[ed]" that a particular construction of a statutory provision was unconstitutional. *Id.* at 243 n. 6, 119 S.Ct. 1215. In other words, it is not necessary for this Court to be "certain" that a particular construction is unconstitutional. *Id.* Instead, this Court must have a "level of doubt" about the constitutionality of a particular construction. *Id.*

In its prior Order, this Court avoided (in compliance with the above precedents) squarely addressing the constitutionality of the government's proposed construction. Instead, this Court stated the constitutional concerns it had with the government's proposed construction and analyzed the statute to see if an alternative construction existed that avoided those constitutional concerns. By this Court resolving those constitutional concerns in the manner that it did, this Court avoided doing grievous harm to Section 2339B by declaring all or parts of it unconstitutional. The practical result of this Court's construction, compared to the construction and results reached by three other courts that declared parts of Section 2339B unconstitutional, is that the government continues to have the ability to stop certain kinds of support from flowing to FTOs.

## B. PERSONAL GUILT

The government first argues that it was unnecessary for this Court to interpret Section 2339B(a)(1) as implying a specific intent requirement in order to satisfy the due process requirements of personal guilt. The government is correct to start with the Supreme Court's seminal opinion in *Scales v. United States,* 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961). This Court disagrees, however, that *Scales* and its progeny require any different result than this Court reached in its prior order. Indeed, the very language utilized by the Supreme Court in *Scales* raised the serious constitutional concerns that this Court recognized in its prior order.

The bottom line of the government's argument is that in its opinion due process personal guilt problems only arise in membership statutes and Section 2339B is not a membership statute. The government relies heavily on the fact that the Smith Act, the act under review in *Scales,* was a membership statute. Indeed, this Court does not quarrel with the government that the Supreme Court in *Scales* held that "[m]embership, without more, in an organization engaged in illegal advocacy" is insufficient to justify individual criminal liability. *Id.* at 225. *Scales* is not so narrowly worded, however, to be limited to just membership statutes. The Supreme Court's opening sentence in its Fifth Amendment section states a much broader principle that is expressly not limited to membership statutes. In that section, the Court stated:

> In our jurisprudence guilt is personal, and when imposition of punishment on a status *or on conduct* can only be justified by reference to the relationship of that status *or conduct* to other concededly criminal activity … that relationship must be sufficiently substantial to satisfy the concept of personal guilt in order to withstand attack under the Due Process Clause of the Fifth Amendment.

367 U.S. at 224–25, 81 S.Ct. 1469 (emphasis added).

If *Scales* only applied to membership statutes, the Supreme Court would not have needed to use the phrases "or on conduct" or "or conduct" because "status" would have been sufficient to cover membership statutes. Instead, the Court held that when criminality and punishment are justified by a relationship to others' conduct, that relationship must be sufficiently substantial to constitutionally support criminal liability.[12]

Turning to Section 2339B(a)(1), this Court has to look no further than the text of the provision to see that the severe punishments provided for in Section 2339B are justified by and explicitly tied to the criminal activity of a FTO.[13] For example, Section 2339B(a)(1) provides for a sentence of up to life imprisonment if the provision of material support results in the death of any person. *See* 18 U.S.C. § 2339B(a)(1).

Consider the following hypothetical example that demonstrates how criminal liability and punishment for conduct are intertwined with the criminal conduct of others under Section 2339B(a)(1). A and B are members of a FTO. The FTO exists to oppose and remove (by violent and nonviolent means) a foreign government. A opposes the FTO's use of violent means to accomplish its goals. B has no problem with the groups use of violence and wants to raise funds for weapons to further that interest. B travels to where A lives to raise money. A does not know that B is coming to fundraise on behalf of the FTO. A picks B up at the airport. A allows B to stay in his home, use his telephone, and use his house to entertain other FTO members while A is at work. B fundraises while A is gone. Under the government's construction of Section 2339B(a)(1), A is criminally liable for providing transportation, lodging, communications equipment, and facilities, and, if the money raised results in the death of any person, he will face life in prison. A's criminal liability is inextricably connected to his association with B and the FTO. Further, the level of A's criminal punishment is totally dependent on B's and other members of the FTO's criminal conduct.

In such circumstances, a Fifth Amendment due process personal guilt concern is suggested, because criminal liability and punishment is being justified and tied to the criminal activities of others. This Court is to avoid that constitutional concern and concludes that requiring a specific intent to further the illegal activities of a FTO satisfies this concern.[14]

## C. VAGUENESS

In its prior order, this Court built on the hypothetical examples utilized by the Ninth Circuit in the *Humanitarian* cases to illustrate how the statutory definition for "material support" could be unconstitutionally vague. The government argues that it was unnecessary for this Court to consider hypothetical examples because as

---

**12.** In that case, the Supreme Court termed the Fifth Amendment constitutional concern as: "impermissibly imput[ing] guilt to an individual merely on the basis of his association and sympathies, rather than because of some concrete personal involvement in criminal conduct." 367 U.S. at 220, 81 S.Ct. 1469.

**13.** Similarly, an element of a Section 2339B offense is that the recipient or intended recipient (in the case of an attempt) of the support be a designated FTO. *See* 18 U.S.C. § 2339B(a)(1).

**14.** This Court is not and has not required the government to prove active membership. Though, the government alleged that Defendants are active members, and that Defendant Al-Arian is (or was) on the governing counsel of the PIJ.

applied to these Defendants' conduct Section 2339B is not unconstitutionally vague. However, it should have been clear from this Court's prior opinion that the constitutional concern that this Court identified was based on a facial, and not an as applied, vagueness challenge to Section 2339B.

In response to a facial challenge, the government argues that the statute is constitutional because it is constitutional in a vast number of circumstances. The government relies on the general rule that a challenger raising a facial constitutional challenge must prove that "no set of circumstances exist under which the Act would be valid." *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).[15]

The government's argument is disingenuous. In the very case on which the government relies, the Eleventh Circuit conceded that the appropriate standard to apply to facially invalidate a statute for vagueness has been hotly debated and inconsistently applied by the Supreme Court. *See Horton v. City of St. Augustine,* 272 F.3d 1318, 1330 (11th Cir.2001); *also United States v. Frandsen,* 212 F.3d 1231, 1235 (11th Cir.2000) (citing Supreme Court cases discussing whether *Salerno* is the proper rule for facial challenges). Under the one standard, which applies to most facial challenges and is the position taken by the government, a challenger is required to prove that no set of circumstances exist under which the statute would be valid. *See* 272 F.3d at 1330 (citing to *Salerno,* 481 U.S. at 745, 107 S.Ct. 2095). However, under a second standard, a court can invalidate a statute even if it has some valid applications. In order to be unconstitutional under the second standard, the statute must reach a substantial amount of constitutionally protected conduct and fail to provide either actual notice or allow for discriminatory or arbitrary enforcement. *See, e.g., Kolender v. Lawson,* 461 U.S. 352, 357–358 n. 8, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

The Eleventh Circuit in *Horton* concluded that several factors are important to the Supreme Court in determining which standard applies: (a) whether the ordinance is a criminal law; (b) whether it regulates business behavior or infringes on constitutional rights; and (c) whether the statute contains a *scienter* requirement. *See* 272 F.3d at 1330 (citing to *City of Chicago v. Morales,* 527 U.S. 41, 55, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999)); *also Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). In addition to the factors set out in *Horton,* this Court's review of the applicable precedents noticed that all the cases where the Supreme Court (for example in *Morales* and *Kolender*) applied the stricter vagueness test (the second standard) involved First Amendment rights being impinged by criminal laws.

For example in *Kolender,* which was decided prior to *Salerno,* the Supreme Court concluded that an ordinance was unconstitutionally vague because it required a suspect to provide credible and reliable information to the police even when the police lacked probable cause to arrest that suspect. *See* 461 U.S. at 361–62, 103 S.Ct. 1855. A majority of the Court stated that the doctrines of vague-

---

**15.** *Salerno* involved a substantive due process and Eighth Amendment challenge to the Bail Reform Act, not a First Amendment challenge. If vagueness and overbreadth are as related and similar as the Supreme Court implied in *Kolender,* it would figure that facial vagueness challenges are also excepted from *Salerno* when First Amendment concerns are raised. *See, e.g., Kolender,* 461 U.S. at 358 n. 8, 103 S.Ct. 1855.

ness and overbreadth are "logically related and similar doctrines" and reaffirmed the validity of facial vagueness challenges when free speech or association are affected.[16] *See id.* at 358 n. 8, 103 S.Ct. 1855. In concluding that the ordinance was vague, Justice O'Connor provided a hypothetical example of how the ordinance would apply to and impinge on the First Amendment rights of a jogger. *See id.* at 359, 103 S.Ct. 1855.

Section 2339B is a criminal statute that potentially impinges on substantial amounts of First Amendment activity.[17] This Court's previous hypotheticals were designed to show the broad and wide reach of Section 2339B to constitutionally protected conduct. Without a specific intent requirement, this Court is concerned that ordinary people could not understand that innocuous conduct, like that discussed at oral argument and described in the previous order and in the previous section,[18] would be prohibited by the statute.

Most of the Supreme Court cases relied on by the government in its prior brief and again in this motion (for the proposition that this Court should not allow a hypothetical challenge) can easily be distinguished from the present case. For exam-

ple, *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994) involved a criminal statute that regulated economic behavior (the sale of drug paraphernalia by a "head shop"),[19] which typically has received a less strict vagueness test than when First Amendment rights are potentially impinged. *See, e.g., Hoffman Estates*, 455 U.S. at 499, 102 S.Ct. 1186. Similarly, *Parker v. Levy* involved a vagueness challenge to provisions of the Uniform Code of Military Justice. 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). In concluding that the provisions were not vague, the Supreme Court explicitly applied a less stringent vagueness test because it concluded that Congress was entitled to greater flexibility in regulating "military society than civilian society." *Id.* at 756, 94 S.Ct. 2547. Likewise, *Young v. American Mini Theatres, Inc.* involved a zoning ordinance, and not a criminal statute like in this case, that prohibited the operation of an adult business within a 1000 feet of any such other business or within 500 feet of a residential neighborhood.[20] 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). Criminal statutes traditionally receive a much more exacting vagueness analysis

16. Even in *Salerno*, the Supreme Court created an exception for the overbreadth doctrine in First Amendment cases. 481 U.S. at 745, 107 S.Ct. 2095.

17. As stated previously by this Court, the Supreme Court has recognized that the act of contributing money to an organization implicates the First Amendment right of freedom of association. *See, e.g., McConnell v. Fed'l Election Comm'n*, 540 U.S. 93, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003); *Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000); *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). Similarly, the Supreme Court has recognized that indirect regulation of a persons associational rights can have the "practical realit[y]" of impermissibly infringing on

a persons First Amendment right of freedom of association. *Healy v. James*, 408 U.S. 169, 182–83, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972) (involving government regulation of the use of college facilities).

18. This Court would suggest that its prior example of A and B in the previous section illustrates protected associational conduct on A's part (B's would be criminal).

19. 511 U.S. 513, 526, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994).

20. Interestingly, the Supreme Court relied on *Parker v. Levy* in concluding that it should not allow a hypothetical challenge, even though *Young* involved civilian and not military society. *See* 427 U.S. at 58–59, 96 S.Ct. 2440.

than do other types of statutes and ordinances. *See, e.g., Kolender,* 461 U.S. at 358 n. 8, 103 S.Ct. 1855.

The most troublesome case cited by the government is *Hill v. Colorado,* 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). *Hill* involved a challenge to a Colorado statute that prevented abortion protesters from approaching within eight feet of an individual who was within 100 feet of an abortion clinic. *See id.* at 714, 120 S.Ct. 2480. The government is correct (and this Court conceded in its prior Order) that the Supreme Court in that case indeed did not address the abortion protester's hypothetical examples in concluding that the statute was not vague. 530 U.S. at 733, 120 S.Ct. 2480. What the government overlooks in the instant motion is that the Supreme Court had already concluded that "[t]he likelihood that anyone would not understand any of those common words seems quite remote" before it stated that it was not appropriate to address the protester's hypothetical examples. *Id.* at 732, 120 S.Ct. 2480. As this Court previously stated, the next paragraph on which the government relies is dicta. Even if it were not dicta, this Court would conclude that Section 2339B [21] does not utilize language nearly as clear and precise as the statute in *Hill.* And, Section 2339B applies to a substantial amount of protected conduct.

However, this Court need not resolve the seemingly conflicting language between *Hill* and *Kolender* or divine the proper standard for facial invalidity in this case.[22] Instead, it is enough that Supreme Court precedent (and that of three other courts) suggests that some of the terms in

Section 2339B could be unconstitutionally vague. Because a constitutional concern exists on whether Section 2339B is unconstitutionally vague, this Court is to avoid that constitutional concern. Requiring a specific intent to further the illegal activities of a FTO satisfies that concern.[23]

## D.  FREEDOM OF ASSOCIATION

Finally, if this Court granted the government's motion, the government's proposed construction would change this Court's freedom of association analysis. In its prior Order, this Court concluded that, as construed, Section 2339B(a)(1) is constitutional because it is closely drawn to further a sufficiently important government interest. Important in this Court's analysis on the closely drawn prong was that the statute had been construed to contain a specific intent requirement that only impaired the illegal aims of a FTO (in this case the PIJ). The government has not argued that this Court's application of that standard of review is incorrect. Indeed, any discussion of the First Amendment is almost completely absent from the instant motion. This Court concludes that, if this Court were to reconsider that ruling, the government's construction of the statute would also cause grave concerns about Section 2339B's constitutionality under the First Amendment.

In *Scales v. United States,* the Supreme Court analyzed the constitutionality of the membership clause in the Smith Act that made it unlawful to have a knowing membership in any organization that advocated the violent overthrow of the United States

---

**21.** For clarity purposes, Section 2339B contains a cross reference to 18 U.S.C. § 2339A(b), which actually contains the potentially vague language.

**22.** A subject that the Supreme Court and the Eleventh Circuit cannot consistently answer.

**23.** To the extent an overbreadth concern could also exist, construing the statute to contain a specific intent requirement also ameliorates those concerns also. *See Osborne v. Ohio,* 495 U.S. 103, 119–22, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990).

government. 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961). Before reaching the constitutional questions raised by the parties, the Court construed the clause and implied a specific intent requirement.[24] See id. at 221, 81 S.Ct. 1469. In determining that the provision was constitutional under the First Amendment (freedom of association), this implied requirement was critical to the Court's analysis that the clause was constitutional. See id. at 229, 81 S.Ct. 1469. The Supreme Court stated:

> It is, of course, true that quasi-political parties [the communist party in that case] or other groups that may embrace both legal and illegal aims differ from a technical conspiracy, which is defined by its criminal purpose, so that all knowing association with the conspiracy is a proper subject for criminal proscription as far as First Amendment liberties are concerned. If there were a similar blanket prohibition of association with a group having both legal and illegal aims, there would indeed be a real danger that legitimate political expression or association would be impaired, but the membership clause, as here construed [to include a specific intent requirement], does not cut deeper into the freedom of association than is necessary to deal with 'the substantive evils that Congress has a right to prevent.'

Id. (quoting Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (1919)).

In Healy v. James, the Supreme Court extended the right of freedom of associa-

tion to include cases where the "practical effect" of an indirect governmental regulation was to infringe on a person's associational rights. 408 U.S. 169, 182–83, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972). Healy involved a civil action brought by a group of university students denied recognition as an official student group. See id. at 171–72, 92 S.Ct. 2338. Denial of official recognition meant that the students could not use campus facilities for meetings and also could not advertise meeting or place announcements on bulletin boards or the school newspaper. See id. at 177, 92 S.Ct. 2338. The students argued that the university's non-recognition had the indirect effect of infringing on their rights to freely associate. See id. at 182, 92 S.Ct. 2338. The university (and the lower courts) argued that no constitutional rights were abridged because the students could meet off campus, advertise off campus, and meet unofficially on campus.[25] The Supreme Court reversed, stating " '[f]reedoms such as these are protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference.' " Id. at 183, 92 S.Ct. 2338.

More recently, the Supreme Court has recognized that the act of contributing money to an organization implicates the right of freedom of association. See, e.g., McConnell v. Fed'l Election Comm'n, 540 U.S. 93, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003); Nixon v. Shrink Missouri Gov't PAC, 528 U.S. 377, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000); Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

**24.** The government's arguments that this Court impermissibly converted the knowingly requirement to a willful requirement are directly contradicted by Scales where the Court implied a specific intent requirement to avoid almost the exact same constitutional infirmities that this Court has identified. This Court is accomplishing Congress's express intent by allowing the prosecution of Section 2339B to

the fullest possible constitutional extent. The government's position, which could lead this Court to invalidate all or part of Section 2339B, and not this Court's, is expressly contrary to Congress's intent.

**25.** The government makes almost identical arguments with respect to Section 2339B(a)(1).

The Court in those cases recognized that regulation of association was constitutional if it was closely drawn to further a sufficiently important government interest. *See McConnell,* 540 U.S. at —, 124 S.Ct. at 654–56; *Shrink Missouri Gov't PAC,* 528 U.S. at 387–88, 120 S.Ct. 897; *Buckley,* 424 U.S. at 30, 96 S.Ct. 612.

While AEDPA and Section 2339B does not directly bar membership in a FTO, it does impose even more dramatic indirect restrictions than those in *Healy* or in *McConnell, Nixon,* or *Buckley* on those who are associated with or wish to associate with FTOs. It prohibits all funding and all tangible support of any kind with extremely limited exceptions for medicine and religious materials. Based on this blanket broad prohibition that has the practical effect of impinging the right of freedom of association, this Court has grave concerns about the constitutionality of Section 2339B. Requiring a specific intent to further the illegal activities of a FTO relieves this concern.

### III.  CONCLUSION

This Court again would state that implying a specific intent requirement does not, will not, and should not hamper the government's anti-terrorism efforts. Such an intent can be easily inferred from circumstantial evidence. This Court reiterates that it is in no way creating a safe harbor for terrorists or their supporters to try and avoid prosecution through utilization of shell "charitable organizations" or by directing money through the memo line of a check towards lawful activities. Instead, this Court is attempting to construe Section 2339B(a)(1) in a manner that avoids constitutional infirmity.

It is therefore **ORDERED** and **ADJUDGED** that the Government's Motion for Modification of Ruling on Scienter un-

der 18 U.S.C. § 2339B(a)(1) (Dkts. # 519, 520) is **DENIED**.