[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-12605

_____

HAMZA MALDONADO,
JAMES HILL,

Plaintiffs-Appellants,

*versus*

BAKER COUNTY SHERIFF'S OFFICE,
SCOTTY RHODEN,
EVELYN BLUE,
Captain,
JAMES MESSER,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 3:20-cv-00193-HLA-PDB

_____

Before NEWSOM, BRANCH, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

Hamza Maldonado and James Hill filed a complaint against the Defendants in Florida state court, asserting violations of their federal and state constitutional rights to the free exercise of their religion.  After Maldonado and Hill applied for and were granted *in forma pauperis* status by the state court, the Defendants—the Baker County Sheriff's Office and Scotty Rhoden, Evelyn Blue, and James Messer, three employees of that office—removed the case to federal court and paid the requisite federal filing fee required under 28 U.S.C. § 1914(a).  After removal, Maldonado and Hill did not seek *in forma pauperis* status in federal court.  The district court subsequently dismissed Maldonado's claims under 28 U.S.C. § 1915(g)—the three-strikes provision of the Prison Litigation Reform Act ("PLRA")—and dismissed Hill's claims for failure to exhaust administrative remedies.

20-12605                Opinion of the Court                3

As to Maldonado, this appeal requires us to determine whether a case commenced in state court by a prisoner and removed by a defendant to federal court—with the defendant paying the filing fee after removal—is subject to dismissal under 28 U.S.C. § 1915(g).  We hold that it is not.

And as to Hill, we hold that the district court erred in dismissing his claims for failure to exhaust his administrative remedies.  We therefore reverse the district court's dismissal of Maldonado and Hill's claims.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Both Maldonado and Hill were prisoners detained in the Baker County Detention Center when they filed their *pro se*[1] prisoner civil rights action in Florida state court.  Maldonado and Hill allege that the Defendants violated their federal and state constitutional rights to the free exercise of their Muslim faith by preventing them from attending Jummah prayer services.[2]  In state court, Maldonado and Hill both filed applications to proceed *in forma pauperis*, which  the state court granted.

---

[1] Although Maldonado and Hill sought appointment of counsel on multiple occasions, they proceeded *pro se* in the district court.  They subsequently obtained *pro bono* counsel for this appeal.  We thank Mr. Amir H. Ali for accepting this case and for his thoughtful presentation of the issues raised on appeal.

[2] Jummah is "a weekly Muslim congregational service" that is "commanded by the Koran and must be held every Friday after the sun reaches its zenith." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 345 (1987); *see also Greenhill v.*

Maldonado is a frequent *pro se* prisoner litigant. At the time this case was being considered by the district court, Maldonado had nine different civil actions pending against various employees of the Baker County Sheriff's Office. Prior to the filing of those actions, Maldonado had filed four other civil rights actions, each of which was filed in federal court in the first instance, and three of which were the cases relied on by the district court in determining that Maldonado was a three-strike litigant under 28 U.S.C. § 1915(g). Indeed, it is undisputed that Maldonado has three strikes against him under § 1915(g).

When the Defendants removed this case to the United States District Court for the Middle District of Florida, the Defendants, as required by 28 U.S.C. § 1914(a), paid the full federal filing fee. Following removal, Maldonado and Hill did not apply for *in forma pauperis* status in federal court under 28 U.S.C. § 1915.

The Defendants moved to dismiss the case, and the district court granted the motion on two grounds. As to Maldonado, the district court dismissed Maldonado's claims based on his three-strike litigant status under 28 U.S.C. § 1915(g). As to Hill, the district court dismissed Hill's claims based on his failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a). This timely appeal ensued.

---

*Clarke*, 944 F.3d 243, 248 (4th Cir. 2019) (observing that Jummah prayer "constitutes one of the central practices of Islam").

## II.    STANDARD OF REVIEW

We review *de novo* a district court's interpretation of 28 U.S.C. § 1915(g). *Daker v. Comm'r, Ga. Dep't of Corr.*, 820 F.3d 1278, 1283 (11th Cir. 2016). We likewise review *de novo* whether a plaintiff has exhausted administrative remedies within the meaning of 42 U.S.C. § 1997e(a). *Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005). "We review *de novo* the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (quoting *Cinotto v. Delta Air Lines, Inc.*, 674 F.3d 1285, 1291 (11th Cir. 2012)).

## III.    ANALYSIS

There are three issues at the heart of this appeal: (1) whether Maldonado's claims are now moot; (2) whether the district court erred in dismissing Maldonado's claims under the three-strikes rule pursuant to 28 U.S.C. § 1915(g); and (3) whether the district court erred in dismissing Hill's claims for failure to exhaust administrative remedies. We address each issue in turn.

### A.    Whether Maldonado's Claims are Moot

The Defendants argue that Maldonado's claims are moot. Specifically, the Defendants argue that 42 U.S.C. § 1997e(e) precludes Maldonado from seeking compensatory and punitive damages because he failed to allege any physical injury arising from his

detention.[3]   Because mootness is a threshold jurisdictional issue, we address this argument first.

We conclude that Maldonado's claims are not moot.  First, § 1997e(e) states that:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act.

Section 1997e(e), however, is not applicable in this case because, as discussed below in Part III.B., "[n]o Federal civil action [was] brought by" Maldonado.  *See Harris v. Garner*, 216 F.3d 970, 973–76 (11th Cir. 2000) (en banc) (explaining that, in the context of § 1997e(e), the bringing of a suit is defined as the commencing of the suit, but not the maintaining of the suit).  Indeed, "§ 1997e(e) does not apply to prisoner lawsuits unrelated to prison conditions filed in state court based solely on state law and removed by defendants to federal court based on diversity jurisdiction." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1317 (11th Cir. 2002).

---

[3] The Defendants also assert that, even though Maldonado did not request injunctive relief, the district court properly dismissed any *potential* claim for injunctive relief as moot because Maldonado was no longer confined at the Baker County Detention Center.  Because Maldonado does not challenge that part of the district court's ruling on appeal, however, we do not address the merits of that argument in this opinion.

Second, even if § 1997e(e) applied to Maldonado, the Defendants' argument is foreclosed by this Court's *en banc* decision in *Hoever v. Marks*, 993 F.3d 1353, 1357–58 (11th Cir. 2021). In *Hoever*, a state prisoner filed a § 1983 civil rights action against various prison officials, alleging a First Amendment retaliation claim and a Fourteenth Amendment due process claim and seeking injunctive relief and compensatory, punitive, and nominal damages. *Id.* at 1356. The district court in *Hoever*, based on our earlier interpretation of § 1997e(e), dismissed the First Amendment claim insofar as it sought compensatory and punitive damages because the plaintiff failed to show a physical injury. *Id.* This Court, sitting *en banc*, receded from that earlier interpretation and held that the plain text of "§ 1997e(e) permits punitive damages absent a showing of physical injury." Thus, pursuant to *Hoever*, Maldonado can assert a claim for punitive damages absent an allegation of physical injury.

## B.    The Three-Strikes Rule

Turning to the merits, Maldonado argues that the district court erred in dismissing his claims under 28 U.S.C. § 1915(g) based on his classification as a three-strikes litigant because he did not bring his action in federal court but instead filed it in state court.

In order to determine whether the district court's dismissal was proper under § 1915(g)'s three-strikes rule, we begin "'with the language of the statute itself,' giving 'effect to the plain terms of the statute.'" *United States v. Henco Holding Corp.*, 985 F.3d 1290, 1297 (11th Cir. 2021) (quoting *In re Valone*, 784 F.3d 1398, 1402

(11th Cir. 2015)).  Section 1915(g)—the three strikes provision of the PLRA—states as follows:

> In no event shall a prisoner *bring a civil action* or appeal a judgment in a civil action or proceeding *under this section* if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

(emphasis added).  The two operative terms in the statute for purposes of this case are "bring a civil action" and "under this section."

To "bring" an action has long meant to initiate or commence it, not to prosecute or to continue it.  *See Black's Law Dictionary* 192 (6th ed. 1990) ("To 'bring' an action or suit has a settled customary meaning at law, and refers to the initiation of legal proceedings in a suit.").  Indeed, the Supreme Court has repeatedly held that to "bring" an action means to commence it.  *See, e.g.*, *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) (holding that the language of 28 U.S.C. § 1404(a)—which permits the transfer of "any civil action to any other district or division where it might have been *brought*"—unambiguously means at the time the lawsuit was filed); *Goldenberg v. Murphy*, 108 U.S. 162, 163 (1883) (determining that a legislative requirement that an action be "brought within

90 days" means it must be commenced in that time period and finding the terms "brought" and "commenced" as meaning the same thing and are used interchangeably).

And this Court likewise has held the same, including where "bring" or "brought" are used in other sections of the PLRA. *See, e.g., Harris*, 216 F.3d at 974 (finding that the text "[n]o federal civil action may be brought by a prisoner confined" in § 1997e(e) means that the statute's bar on monetary relief absent a showing of physical injury applies only to actions that were commenced at the time that the plaintiff was confined in prison); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir.1999) (determining that "brought" in § 1997e(a) means the filing of the action and holding that "[a]n inmate incarcerated in a state prison, thus, must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."); *EEOC v. E. Airlines, Inc.*, 736 F.2d 635, 639–40 (11th Cir. 1984) (determining that the plain meaning of "to bring" a private action under § 7(c)(1) of ADEA means "only 'to commence,' rather than to 'commence or maintain'").

"This long history of established meaning is important, because we readily presume that Congress knows the settled legal definition of the words it uses, and uses them in the settled sense." *Harris*, 216 F.3d at 974; *see also Comm'r v. Keystone Consol. Industries, Inc.*, 508 U.S. 152, 159 (1993) (explaining that Congress is presumed to be aware of settled judicial and administrative interpretations of words when it writes them into a statute). As such,

to "bring" or to have "brought" an action in the context of the PLRA unambiguously means to file or commence the action. Indeed, "brought" and "commenced" mean the same thing and are used interchangeably.

With this definition of to "bring" an action in mind, we turn to the second operative phrase in the statute—"under this section." That phrase unambiguously refers to § 1915 itself. To bring an action under § 1915, the prisoner must seek and be granted the ability to proceed *in forma pauperis* in a "court of the United States" by submitting "an affidavit that includes a statement of all assets such [person] possesses" to prove indigency. *See* 28 U.S.C. § 1915(a). As defined for purposes of Title 28, "[t]he term 'court of the United States' includes the Supreme Court of the United States, courts of appeals, [and] district courts." 28 U.S.C. § 451. Significantly, the statutory definition does not include state courts. Thus, the plain meaning of § 1915(g) is clear—it applies only to actions commenced by a prisoner in federal court who seeks and is granted *in forma pauperis* status in that court.

Maldonado commenced his action in state court; the fact that the case proceeded in federal court was a result of the Defendants' removal, not any affirmative act on Maldonado's part. Moreover, Maldonado never sought *in forma pauperis* status in federal court after removal. As a result, Maldonado did not "bring" an action "under this section."

The Defendants advance a number of policy-based arguments in support of the district court's dismissal of Maldonado's

claims. But applying § 1915(g)'s prohibition to the facts in this case would require us to override the statutory language. "Language sets limits." *See Hill v. Madison County*, 983 F.3d 904, 907 (7th Cir. 2020). The statutory language Congress chose when it enacted § 1915(g) establishes a specific rule, not a generalized standard to be elaborated on later by judges. *Id.* And courts are not free to turn such statutory rules into standards. *See Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987) ("[N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law."). Instead, it is the job of the courts "to apply faithfully the law Congress has written," *see Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017), and policy arguments that § 1915(g) should apply to a removed case like the one here must be directed to Congress, not to the judicial branch.

Moreover, even if we were to take into consideration the policy goals underlying § 1915(g), those goals are not subverted by our conclusion that Maldonado's claims are not barred by the three-strikes provision. Section 1915(g) limits the number of frivolous suits that prisoners can bring in federal court, without at least paying something for the exercise. *See Skinner v. Switzer*, 562 U.S. 521, 535 (2011); *Hill*, 983 F.3d at 907. As an initial point, the federal filing fee was paid in full here by the Defendants who removed the

case, so the federal courts are not burdened by an action without payment. Moreover, the three-strikes rule was intended to deter prisoners from filing meritless lawsuits in *federal* court, *see Skinner*, 562 U.S. at 535, and that goal is not offended by Maldonado pursuing his claims in Florida *state* court. Indeed, it was the Defendants, not Maldonado, who chose the federal forum.

Finally, the fact that § 1915(g) does not prohibit Maldonado from proceeding here does not leave the Defendants without recourse against frivolous claims. Instead, "[c]ourts have ample other means to penalize the pursuit of frivolous suits that are removed to federal court." *Hill*, 983 F.3d at 907. For example, Rule 11 of the Federal Rules of Civil Procedure applies to all papers filed in federal court, including those filed *pro se*. Admittedly, disposition of a prisoner's frivolous claim brought may be more efficient when § 1915(g) applies. But that is no reason to apply the three strikes provisions beyond the boundaries of its statutory language.

The plain and ordinary meaning of § 1915(g) is clear—it only applies to cases commenced in federal court by a prisoner who sought and was granted *in forma pauperis* status in that court.[4] As

---

[4] With this holding, we join every other circuit to address the applicability of § 1915(g)'s three-strikes rule to cases initiated by a prisoner in state court but later removed to federal court by the defendants. Each of these courts has concluded that § 1915(g) does not apply to such cases. *See Woodson v. McCollum*, 875 F.3d 1304 (10th Cir. 2017) (reversing dismissal under § 1915(g) of a case virtually identical to the one here and finding that, based on the plain meaning of the text, § 1915(g) did not apply); *Dooley v. Wetzel*, 957 F.3d 366, 377 n.9 (3d Cir. 2020) (holding that an action brought or submitted to the state

20-12605                Opinion of the Court                13

such, § 1915(g) does not apply to actions, like the one here, brought by a three-strikes litigant in state court that was removed to federal court by another party. We therefore reverse the district court's dismissal of Maldonado's claims.

## C.    Exhaustion

Turning to Hill's claims, Hill argues that the district court erred by dismissing his claims for failure to exhaust administrative remedies. In dismissing Hill's claim, the district court determined that it was clear from the face of the complaint that an administrative grievance procedure was available to Hill—based on Maldonado's separate allegation that Maldonado pursued that procedure—and that Hill had not exhausted those remedies—based on Hill's allegation in the complaint that "[t]here is no grievance remedy for Mr. Hill because the denial at issue in this case is absolute." The district court failed, however, to follow the two-step inquiry related to exhaustion established by our precedent.

---

court, not to "a court of the United States," does not fall within the scope of § 1915(g)); *Hill v. Madison County*., 983 F.3d 904, 906 (7th Cir. 2020) (finding that "§ 1915(g) does not apply to complaints brought to federal courts by defendants" and holding that a case filed in state court, removed to federal court, and dismissed on a listed ground does not count as a "strike" because the plaintiff did not "bring" his suit in a court of the United States); *Harris v. Magnum*, 863 F.3d 1133 (9th Cir. 2017) (finding that § 1915(g) "does not prevent an indigent prisoner-plaintiff with three strikes from proceeding in a case that someone else has filed in federal court").

The PLRA forbids suits by prisoners "with respect to prison conditions" under any federal law, including the United States Constitution, "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This statutory exhaustion requirement is a mandatory pre-condition to suit.  *Alexander v. Hawk*, 159 F.3d 1321, 1325–26 (11th Cir. 1998).  As used in § 1997e(a), the word "remedies" "refers to the administrative process, not the particular forms of relief occurring at the end of that process."  *Varner v. Shepard*, 11 F.4th 1252, 1262 (11th Cir. 2021) (citing *Booth v. Churner*, 532 U.S. 731, 738–39 (2001)).  But if remedies are unavailable to a prisoner, they need not be exhausted. *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008).  Exhaustion of administrative remedies is an affirmative defense that must be proved by the defendants; a plaintiff need not "specially plead or demonstrate exhaustion in [his] complaint."  *Jones v. Bock*, 549 U.S. 199, 217 (2007).

In *Turner*, this Court established a two-step process for resolving motions to dismiss for failure to exhaust: (1) looking to the defendant's motion and the plaintiff's response, the district court assesses whether dismissal is proper under the plaintiff's version of the facts; and (2) if dismissal is inappropriate after step one, the court makes "specific findings in order to resolve the disputed factual issues related to exhaustion."  541 F.3d at 1082.  Under step one, when determining exhaustion on the face of the complaint, the court must "accept allegations in a complaint as true and construe them in the light most favorable to the plaintiff."  *Bingham v.*

*Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011). If step two is reached, the district court's findings must be specific enough to provide this Court with an opportunity to conduct meaningful appellate review. *Danley v. Allen*, 480 F.3d 1090, 1092 (11th Cir. 2007). If a district court fails to properly apply the two-step *Turner* test, remand is generally appropriate. *See Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1213 (11th Cir. 2015).

Here, Hill's statement in the complaint that "[t]here is no grievance remedy for [him] because the denial at issue in this case is absolute" is ambiguous and lends itself to various interpretations. It certainly could, as the Defendants assert, refer to the administrative process, *i.e.*, the legal meaning of "remedies" for purposes of the statutory exhaustion requirement. But taking that *pro se* allegation in the light most favorable to Hill, as this Court must, it could plausibly refer to the relief available to Hill at the end of the administrative process, *i.e.*, that Hill was met with an "absolute" denial of his ability to attend Jummah prayer services after attempting to exhaust the administrative processes. And in his *pro se* response to the motion to dismiss, Hill stated that the Defendants "misconstrued the meaning" of that statement and specifically asserted that he had in fact "exhausted all remedies just like Mr. Maldonado." At step one, then, dismissal was not appropriate under Hill's version of the facts.

The district court should then have proceeded to step two and made "specific findings in order to resolve the disputed factual issues related to exhaustion." Instead, the district court's order on

this issue fails to address Hill's response, in which he states that he did in fact exhaust administrative remedies, and fails to provide any "specific findings" for this Court to meaningfully review how the district court resolved the disputed facts. Thus, the district court's order appears to adopt the Defendants' version of the facts and their interpretation of Hill's statements without mention or reference to Hill's version—even though Hill's version must, at this procedural stage, be taken as true. Because the district court failed to follow *Turner*'s two-step process, remand is appropriate to allow the district court to make these specific findings in the first instance. *See Whatley*, 802 F.3d at 1213. We therefore reverse the district court's dismissal of Hill's claims.

## IV.    CONCLUSION

For the foregoing reasons, we reverse the district court's dismissal of both Maldonado's and Hill's claims and remand for further proceedings.

**REVERSED AND REMANDED.**