[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10453

Non-Argument Calendar

_____

DAVID TIMOTHY MOORE,

Plaintiff-Appellant,

*versus*

DOOLY SP WARDEN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:21-cv-00032-TES-CHW

_____

Before WILSON, ANDERSON, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff, a Georgia state prisoner proceeding *pro se*, appeals the district court's orders denying his motion for a temporary restraining order and dismissing his 42 U.S.C. § 1983 claim for failure to exhaust administrative remedies. After careful review, we affirm the district court's ruling denying Plaintiff's motion for a temporary restraining order, but vacate the district court's order dismissing Plaintiff's § 1983 claim and remand for the district court to conduct a hearing as to the disputed factual issue underlying the question whether Plaintiff failed to exhaust his administrative remedies.

## BACKGROUND

This case arises from Plaintiff David Moore's confinement at Dooley State Prison ("DSP"), where Defendant Warden Aimee Smith ("the Warden") has been the warden since Plaintiff's arrival. Plaintiff brought this claim under 42 U.S.C. § 1983 against the Warden in her official and individual capacities, claiming a violation of the Eighth Amendment's prohibition of cruel and unusual punishment based on the Warden's failure to move Plaintiff from a unit that the Warden knew to contain black mold. Plaintiff claims that this exposure to black mold weakened his immune system and caused him to develop a urinary tract infection, as well as other ailments. The facts we set out below reflect the specific factual allegations made by Plaintiff in his complaint.

Almost a year after arrival, Plaintiff was moved to an open dorm building that Plaintiff says contained black mold on the ceilings, walls, water fountains, and showers. About two days after moving into the open dorm building, Plaintiff alleges that he began experiencing coughing spells, sinus inflammation, chest pains, itchy skin, and headaches of a greater intensity and frequency than usual. Because his symptoms began so soon after the move and because black mold was visible to the naked eye, Plaintiff attributed his ailments to the mold. Plaintiff wrote a letter to the Warden detailing the effects of the black mold on his health and requesting to be moved back into an individual cell. He received no response. Plaintiff also complained about the mold and his illnesses to some of the Warden's subordinates, but no action was taken.

About a month later, Plaintiff fell extremely ill, experiencing a loss of "all strength in his body," loss of appetite, nausea, chills, painful urination, inability to control his urination, and rapid weight loss. DSP medical personnel diagnosed Plaintiff with a urinary tract infection, which Plaintiff attributes to a weakening of his immune system that was caused by his residency in a mold-infested dorm. According to his complaint, Plaintiff filed a formal "emergency grievance" addressing the mold issue and explaining that his preexisting health conditions necessitated an immediate housing transfer.

Sixteen days after filing the grievance, and before he had received any response, Plaintiff commenced the present action. In his Complaint, Plaintiff alleges that, in violation of the Eighth

4                    Opinion of the Court                    22-10453

Amendment, the Warden had been deliberately indifferent to his medical needs when she failed to move Plaintiff after he alerted prison personnel to the health issues he was suffering as a result of the mold. Plaintiff moved to proceed *in forma pauperis* ("IFP"). Separately, he also moved for a temporary restraining order ("TRO") or preliminary injunction ("injunctive-relief motion") enjoining the Warden from housing Plaintiff in the contaminated building and requested an emergency hearing on the motion.

The magistrate judge granted Plaintiff's motion for leave to proceed IFP,[1] but issued a Report and Recommendation ("R&R") recommending that his injunctive-relief motion be denied. Plaintiff objected to the magistrate judge's recommendation against granting injunctive relief, arguing, among other things, that an allegation that there was black mold in his dorm was sufficient to warrant an emergency hearing on the motion. Reviewing

---

[1] The document submitted by the Warden indicates that as of January 5, 2021, Plaintiff had filed 78 prior grievances during his preceding 12+ years in state custody. Moreover, the magistrate judge noted that Plaintiff had previously been barred from proceeding *in forma pauperis* in earlier litigation because while a prisoner he had, on at least three occasions, brought civil actions that were either frivolous, malicious, or failed to state a claim. Such conduct typically means that the prisoner is barred from proceeding IFP in future litigation. But there is an exception to this bar when the prisoner alleges specific facts suggesting that he is in imminent danger of physical injury as a result of the conduct underlying his claim. The magistrate judge concluded that Plaintiff's allegations here met the standard for applying the exception to the "three-strikes" bar.

Plaintiff's objections *de novo*, the district court adopted the Magistrate Judge's R&R and denied Plaintiff's injunctive-relief motion.

As to Plaintiff's § 1983 claim, the Warden moved to dismiss the Complaint, arguing that Plaintiff had failed to exhaust administrative remedies. In support of her motion, she argued that when a state provides a grievance procedure, the Prison Litigation Reform Act of 1995 ("PLRA") requires the exhaustion of administrative remedies before filing a § 1983 claim.[2] The Warden provided declaration testimony from DSP Grievance Coordinator Tracy Jackson outlining the Georgia Department of Corrections Statewide Grievance Procedure[3] and stating that Plaintiff had not completed the specified administrative grievance procedures prior to bringing this action.

As Jackson explained in her written declaration, the administrative grievance process is divided into two steps: the filing of the grievance and the appeal by the prisoner of an adverse decision from the Warden.[4] Once the grievance has been received by prison

---

[2] *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [§] 1983 . . . or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted.").

[3] We use interchangeably the term "Statewide Grievance Procedure" and its acronym "SGP."

[4] Step one is denominated "Original Grievance," and it contains a very detailed set of procedures governing the filing and processing of a grievance. Step two is denominated "Central Office Appeal," and this section sets out the manner in which a prisoner should file an appeal, along with the relevant deadlines for doing so. *See generally* SGP IV.B. and C.

staff, the Warden is required to deliver his or her decision within 40 days, with the possibility of a 10-day extension. The second step of the procedure permits the prisoner to appeal an adverse decision by the Warden to the Central Office.[5] Such an appeal may be filed only after the prisoner has either received the adverse decision or the time allowed for the Warden's decision has expired. As noted by Jackson, Plaintiff initiated his litigation prior to receiving a decision from the Warden, and he never appealed to the Central Office. Accordingly, Jackson concluded, Plaintiff filed suit prior to the grievance procedure being completed.

As to Plaintiff's allegation in his Complaint that the grievance he had filed was denominated as an "emergency grievance," Jackson declared that the grievance in question was not categorized as an emergency grievance by Plaintiff, nor in screening the grievance did the duty officer determine that the facts alleged therein gave rise to an emergency.

In response, Plaintiff insisted that he had filed an emergency grievance, and he attached as an exhibit what he stated was a copy of the grievance he had filed. Handwritten at the top of that form were the words, "Emergency Grievance Pursuant to SOP 227.02 III.F. and IV.D(1 & 2)." As to Jackson's declaration testimony that Plaintiff had not submitted an emergency grievance, Plaintiff questioned why she had not attached to her own declaration a copy of

---

[5] Although the term "Central Office" does not appear to be defined in the Statewide Grievance Procedure, we understand it to mean the Commissioner of the Georgia Department of Corrections.

the grievance he had filed. Plaintiff averred that Jackson's declaration represented perjured testimony and, given the "blatant untruths" in the Jackson declaration, he asked the court "at the very least. . .[to] hold a hearing on this perjury issue." As to the import of the characterization of a grievance as an emergency grievance, Plaintiff argued that the procedure relevant to the processing of an emergency grievance calls for a response by a duty officer within five days and, because Plaintiff did not hear from a duty officer within that period of time, Plaintiff argues he had exhausted his remedies and was free to go ahead and file a lawsuit.

The magistrate judge then issued a second R&R, recommending that the Warden's motion to dismiss be granted and that Plaintiff's claim be dismissed without prejudice. In the R&R, the magistrate judge made specific factual findings and determined, based on these findings, that Plaintiff's grievance was an "original"—that is, non-emergency—rather than an emergency grievance. Specifically, the magistrate judge found that the spacing along the top of the grievance form suggested that Plaintiff wrote in the phrase "Emergency Grievance" after the fact for purposes of the present litigation, not prior to submitting it to prison officials. Also relevant here, the R&R stated that Jackson's declaration testimony was credible and further supported an inference that Plaintiff had not filed an emergency grievance. Thus, the magistrate judge concluded that Plaintiff commenced this action prior to exhausting the applicable two-step grievance procedure.

In his objections to the second R&R, Plaintiff argued that the determinations made by the magistrate judge were not based on the evidence presented, but on conjecture. He referenced his earlier response to the motion to dismiss, in which he had accused Jackson of perjury and had requested a hearing on the factual question whether he had filed an emergency grievance, as opposed to a non-emergency grievance. He noted that he was the only party who had presented a document that purported to be a copy of the grievance he had actually filed. Defendant, he argued, had merely submitted a typed form created by prison officials that summarized the grievance filed by Plaintiff. In addition, he noted that Defendant had never disputed that Plaintiff's Exhibit P-2 was a copy of the emergency grievance he had filed, as Defendant had filed no reply to Plaintiff's response to the motion to dismiss. He argued that by failing to produce a copy of the actual handwritten grievance that Plaintiff had filed, Defendant had failed to corroborate Jackson's testimony that Plaintiff had not filed an emergency grievance. This, Plaintiff argued, should prompt either a denial of Defendant's motion to dismiss or a hearing at which Defendant would be required to produce the actual form filed by Plaintiff.

Characterizing Jackson's declaration testimony as "[p]articularly telling," the district judge adopted the Magistrate Judge's R&R finding that Plaintiff's grievance was not filed as an emergency grievance, granted the Warden's motion to dismiss, and dismissed without prejudice Plaintiff's complaint for failure to exhaust administrative remedies.

Plaintiff appeals the district court's denial of his injunctive-relief motion and its dismissal of his complaint.

## DISCUSSION

### I.    Standard of Review

We review the district court's decision to deny Plaintiff's injunctive-relief motion for an abuse of discretion, reviewing *de novo* any underlying legal conclusions and for clear error any findings of fact. *Friedenberg v. Sch. Bd. of Palm Beach Cnty.*, 911 F.3d 1084, 1090 (11th Cir. 2018) (providing standard of review for denial of a preliminary injunction); *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1280 (11th Cir. 2015) (providing standard of review for denial of a TRO). We review *de novo* the district court's interpretation and application of the PLRA's exhaustion requirement. *Varner v. Shepard*, 11 F.4th 1252, 1257 (11th Cir. 2021). The district court's factual findings related to the exhaustion requirement are reviewed for clear error. *Id.* Otherwise, "we accept as true the facts as set forth in the complaint and draw all reasonable inferences in [the plaintiff's] favor." *Id.* (alteration in original) (quoting *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010)).

### II.    Dismissal of Plaintiff's Claim

Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress imposed an exhaustion requirement in order "to afford

prison officials time to address grievances internally before allowing a prisoner to initiate a federal lawsuit." *Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005). "[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Varner*, 11 F.4th at 1257 (citation omitted).

In her motion to dismiss, the Warden contends that Plaintiff failed to exhaust his remedies before filing suit. Specifically, the Georgia Department of Corrections has promulgated the Statewide Grievance Procedure, which prisoners are required to follow when asserting a grievance. According to the protocol set out in Policy Number 227.02, a prisoner may file a grievance as to any grievable issue. Once a grievance has been filed, prison staff then investigate and submit a report and recommendation to the warden of the prison. The warden or her designee has 40 days from the date the prisoner submitted his grievance form to deliver the warden's decision to the prisoner, with the possibility of a "one-time, ten (10) Calendar Days-extension" if the extension is communicated to the prisoner prior to expiration of the initial 40-day deadline. The prisoner may file an appeal to the Central Office only after he has either received the warden's decision or the time period has expired for the warden to give the prisoner the warden's decision. As to his deadline for filing an appeal, the prisoner must do so within 7 days of receiving the Warden's decision, although an appropriate official can waive this time limit for good cause.

In short, according to the provision of the protocol identified by the Warden, the latter had 40 days to render a decision on Plaintiff's grievance complaining about the conditions of his confinement: that is, Plaintiff's complaint that he was being housed in an area that had black mold and that this mold was seriously damaging his health. Plaintiff, however, did not give the Warden this 40-day period to render a decision, but instead—only 16 days after submitting his grievance—he filed a complaint in federal district court and asserted a § 1983 claim based on the subject matter of that grievance. Accordingly, Defendant argues that Plaintiff failed to exhaust his administrative remedies prior to filing suit.

Indeed, Plaintiff does not disagree that if the Warden had in fact been allowed 40 days to decide the grievance, then Plaintiff would have jumped the gun by filing his lawsuit prior to the expiration of that period. Plaintiff argues, however, that because he had filed an "emergency" grievance, as opposed to a grievance not labeled an emergency, a prison official (the duty officer) had at most five days to determine whether the situation required immediate remediation. According to Plaintiff, when the duty officer failed within five days to inform Plaintiff that the officer disagreed that the grievance constituted an emergency, this liberated Plaintiff from the responsibility of complying with those provisions of the grievance procedure that give the Warden 40 days to render a final decision on the grievance's merits and that call for an appeal from an adverse decision to the Central Office.

In support of his position, Plaintiff points to a provision in the grievance procedure protocol that describes an "emergency grievance," which is defined as "[a]n unforeseen combination of circumstances, urgent need, or the resulting state that calls for immediate action or relief through the grievance process." When an emergency grievance is filed, the duty officer must be notified immediately and must determine if the grievance fits the definition of an emergency grievance. If he decides that it does, the officer must take immediate action and provide an initial response within 48 hours. If the duty officer determines that the grievance does not constitute an emergency grievance, he must document the reason why and notify the prisoner within five calendar days following the submission of the grievance. Once the emergency grievance has been deemed not to relate to an emergency, the prisoner can then file a new grievance within 10 days of that notification, which presumably will then be processed as would any other grievance.

In short, Plaintiff contends that once the duty officer failed to inform Plaintiff within five days that the officer disagreed that the matter needed to be handled as an emergency, Plaintiff was free to file suit immediately without first awaiting a decision on the actual merits of his grievance from the Warden and then appealing an adverse decision by the latter. Whether or not Plaintiff's position reflects a correct legal interpretation of the Department of Correction's protocol is not a question the district court or the parties addressed. Therefore, even assuming as a factual matter that Plaintiff filed an emergency grievance, the present appeal does not permit us to decide whether Plaintiff is correct in his legal premise

that a prisoner can be deemed to have no further administrative remedies to exhaust whenever a prison duty officer has determined—through his silence or through direct communication with the prisoner—that the grievance does not need to be handled as an emergency.

Instead, in dismissing the case, the district court relied on its factual determination that although Plaintiff had filed a grievance, he had not designated that grievance as an emergency grievance. That being so, the Warden clearly had at least 40 days to respond, and Plaintiff's filing of a federal lawsuit prior to the expiration of that 40-day period meant that Plaintiff had failed to exhaust his administrative remedies. The district court therefore dismissed the case, and did so without prejudice.

Thus, the only question for us to decide in the present appeal is whether to uphold the district court's factual determination that Plaintiff had filed only an ordinary grievance, not an emergency grievance. At the outset, we note that when a defendant has asserted, as an affirmative defense to a federal lawsuit, a prisoner's failure to exhaust administrative remedies, it is the district court, not a jury, that resolves any factual disputes between the parties. This is so because although a failure-to-exhaust defense is not strictly speaking a jurisdictional defense, it is akin to the latter as it does not deal with the merits of the action. That being so, it is treated as a "matter in abatement." *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). Stated another way, exhaustion under the PLRA is a precondition to a plaintiff's ability to receive adjudication

of the merits of his complaint, and a motion to dismiss based on a failure to exhaust remedies should be decided by the court. *Id.* at 1374–75.

In carrying out its duty to determine whether a prisoner-plaintiff has exhausted his administrative remedies, the district court followed the two-step analysis set out in *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). A complaint is subject to dismissal under step one of *Turner*'s review sequence if the plaintiff's factual allegations, taken as true, demonstrate a failure to properly exhaust administrative remedies. *Id.* at 1082. If dismissal is not warranted under step one, the court then makes specific findings to resolve factual disputes and determine, based on these findings, whether the prisoner exhausted administrative remedies. *Id. See also Bryant*, 530 F.3d at 1374, *quoting Wyatt v. Terhune*, 315 F.3d 1108, 1119–20 (9th Cir. 2003) ("[i]n deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact"). And because the failure to exhaust administrative remedies is an affirmative defense, the burden is on the defendant to show that the plaintiff has not exhausted those remedies. *Whatley v. Smith*, 898 F.3d 1072, 1082 (11th Cir. 2018).

Accepting as true Plaintiff's allegation in his Complaint that he had filed an emergency grievance, the district court[6] concluded

---

[6] After conducting a *de novo* review of the record, the district court adopted the magistrate judge's R&R, which unless otherwise indicated provided the findings that are recounted in text.

that Plaintiff survived *Turner*'s first step:  that is, his allegations on their face did not demonstrate a failure to exhaust remedies.[7]  However, the district court determined that Plaintiff's Complaint failed at the second step, which requires the court to make factual findings on disputed matters.  Primarily relying on Jackson's declaration testimony, the court concluded that Plaintiff's grievance was not filed as an emergency grievance and that Plaintiff thus failed to exhaust the two-step original grievance procedure before commencing this action.

We review the district court's factual findings on exhaustion for clear error.  *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015).  Here, Plaintiff alleged in his Complaint that he had filed an emergency grievance.  The Warden moved to dismiss the complaint and supported that motion with a sworn declaration from a prison official—Tracy Jackson—who stated she had reviewed Plaintiff's file and had determined that he had not categorized the grievance he filed on January 5, 2021 as an emergency grievance. Attached as an exhibit to that declaration was a typed document in which a prison official had set out various events that had occurred

---

[7] We again note that although Defendant has not conceded the point, the magistrate judge and district court assumed without deciding that if Plaintiff had filed an emergency grievance and if the duty officer screening the emergency grievance failed to inform him within 5 days why the officer did not consider the subject matter of the grievance to qualify as an emergency, Plaintiff was free to file suit without further exhausting other procedures that require the Warden to make the final decision concerning the merits of a grievance. We emphasize that we neither endorse nor reject that legal construction of the Georgia grievance procedures.

in connection with the prison's processing of Plaintiff's grievance. Included in that document was the prison official's typed recitation of Plaintiff's grievance, inserted into a block titled "Complaint/Resolution." Nothing in that recitation indicated that Plaintiff's grievance had been filed as an emergency grievance.

In his response opposing dismissal, Plaintiff attached as an exhibit what he said was a handwritten copy of the grievance that he had filed; at the top of that grievance were written the words "Emergency Grievance." As the only party who had submitted what was alleged to be a copy of the grievance that was actually filed, Plaintiff called on the Warden to present the copy of the grievance on which she based her assertion that Plaintiff had not characterized his grievance as an emergency grievance. The Warden filed no reply disputing Plaintiff's allegation that the exhibit he provided was a copy of the grievance he had actually filed. Nor has Jackson ever explained the basis for her assertion that Plaintiff's grievance lacked a designation as an emergency filing. As noted, the document that she filed and referred to as a grievance was a typed document prepared by prison officials.

Nevertheless, the magistrate judge and district court concluded that Jackson's position on the matter was more credible than Plaintiff's. Yet, as Jackson never provided any foundation for her statement that Plaintiff had not filed an emergency grievance, her testimony failed to engage the factual matter on which her credibility was being gauged by the court. The magistrate judge opined that, given the spacing and slant of the handwritten words

on the copy of the grievance submitted by Plaintiff, those words appear to have been written in after the fact, for the purpose of this litigation. The magistrate judge's observation and accompanying inference may well turn out to be true, but given the absence of any explanation by Jackson of her basis for asserting that the filed grievance did not contain the emergency designation, a conclusion by the court affirming that assertion is premature on the current record. *Cf. Maldonado v. Baker Cnty. Sheriff's Off.*, 23 F.4th 1299, 1308 (2022) (reversing the district court's dismissal of the prisoner's complaint and remanding because the district court was required to make specific findings to resolve disputed factual issues related to exhaustion of remedies, but instead failed to provide findings specific enough for the appellate court to meaningfully review how the district court resolved the disputed facts).

Accordingly, we remand for the district court to conduct a hearing[8] to decide the factual question whether Plaintiff denominated the grievance in question as an emergency grievance, as well as any other relevant factual or legal questions necessary for a

---

[8] The Warden argues that because Plaintiff did not request a hearing, he waived the right to such a proceeding. We disagree with the factual premise of that contention. In opposing dismissal of his complaint in both his response to the motion to dismiss and in his objections to the magistrate judge's R&R, Plaintiff requested a hearing to resolve the question whether Jackson committed perjury in her declaration that Plaintiff had not categorized his grievance as an emergency grievance. That request seems to us to have been sufficient to inform the district court that Plaintiff sought a hearing to resolve the factual dispute concerning the type of grievance he had filed.

determination of the question whether Plaintiff properly exhausted all administrative remedies.

## III.    Denial of Plaintiff's Injunctive-Relief Motion

Plaintiff also appeals the district court's denial of his motion for a TRO or preliminary injunction to require prison authorities to move him from the prison area allegedly containing black mold. A preliminary injunction is only appropriate if a movant clearly establishes (1) a substantial likelihood of success on the merits, (2) that injunctive relief is necessary to prevent irreparable injury, (3) that the threatened injury outweighs the harm the order would inflict on the non-movant, and (4) that the order would not adversely affect the public interest. *Horton v. City of St. Augustine*, 272 F.3d 1318, 1326 (11th Cir. 2001). Preliminary injunctive relief is "an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the burden of persuasion as to all four elements." *Id.* (quotation marks and citation omitted). This Court reviews the denial of a motion for a preliminary injunction for abuse of discretion. *Swain v. Junior*, 961 F.3d 1276, 1285 n.3 (11th Cir. 2020). The same standard applies to the denial of a motion for a TRO. *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d at 1280 (11th Cir. 2015).

On the same date he filed his Complaint accusing the Warden of deliberate indifference to his medical needs—January 21, 2021—Plaintiff asked for a TRO/preliminary injunction to require that the Warden move him to a different dorm. As to his claimed injury resulting from the alleged existence of mold in the unit,

Plaintiff primarily complained about a severe urinary tract infection that he alleged he contracted because the mold had weakened his immune system. In reviewing Plaintiff's motion for preliminary injunctive relief, the magistrate judge characterized Plaintiff's allegations as "somewhat speculative" and "minimal." In denying the motion, both the magistrate judge and the district court concluded that, among other things, Plaintiff had failed to show a substantial likelihood of success on his claim.

Based on our review of the record, we find no abuse of discretion in this determination. But there is an equally strong practical reason why it would be futile for us to require the district court on remand to conduct a hearing on Plaintiff's request that he be moved to a different prison unit pending litigation of his claim. Specifically, Plaintiff is no longer housed in the prison building that he alleges contained black mold. The record does not indicate the date on which Plaintiff was moved, but Plaintiff acknowledged in his March 19, 2021 motion for an extension of time to file written objections to the magistrate judge's R&R that he had been moved to a different building. He confirmed that fact again on April 13, when he filed those objections.

The purpose behind Plaintiff's motion for preliminary injunctive relief was to ensure that he was not housed in a place he considered dangerous to his health while his litigation proceeded. That goal has now been accomplished. As the present litigation proceeds on remand, Plaintiff is free to request injunctive relief

20                    Opinion of the Court                    22-10453

should the situation change.[9]  In short, we affirm the district court's denial of Plaintiff's motion for preliminary injunctive relief.

## CONCLUSION

For the above reasons, we **AFFIRM** the district court's order denying Plaintiff's injunctive-relief motion, but **VACATE** the district court's order dismissing Plaintiff's § 1983 claim and **REMAND** to the district court for proceedings consistent with this Opinion.

---

[9] We often find a conditions-of-confinement claim to be moot when a prisoner has been moved to a different institution.  *See, e.g., Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988).  We recognize that Plaintiff has not been moved to a different institution and accordingly are not holding that his claim is moot. Indeed, we have remanded that claim for the district court to conduct further proceedings.  Instead, we simply conclude that no danger presently exists that a preliminary injunction could remedy.